DAVID A. HUBBERT
Deputy Assistant Attorney General

CHARLES J. BUTLER (DC Bar 468754)
Assistant Chief, CTS-Western
E. CARMEN RAMIREZ (DC Bar 975331)
Trial Attorney
Tax Division, U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
Telephone:    202-514-6062 (Butler)
              202-616-2885 (Ramirez)
Facsimile:    202-307-0054
Email:        Charles.J.Butler@usdoj.gov
              E.Carmen.Ramirez@usdoj.gov

*Counsel for the United States of America*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Govig & Assocs., Inc., et al., | Case No. 2:22-cv-00579-GMS |
| Plaintiffs, | |
| v. | **UNITED STATES' MOTION TO DISMISS AND SUPPORTING MEMORANDUM** |
| United States of America, et al., | |
| Defendants. | **Oral Argument Requested** |

The United States of America hereby moves to dismiss the plaintiffs' action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Undersigned counsel certifies that pursuant to LRCiv 12.1(c), counsel for the United States notified the plaintiffs' counsel of the issues asserted in this motion through telephone calls on June 20 and July 18, 2022. The parties could not agree that amending the Complaint would cure the issues.

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ............................................................................................... 3

   A.  Statutory and Regulatory Regime ............................................................ 3

   B.  IRS Notice 2007-83 ................................................................................. 6

   C.  The Plaintiffs' Claims and Procedural History ....................................... 7

III.  ARGUMENT ................................................................................................... 9

   A.  The Anti-Injunction Act and the Declaratory Judgment Act's Tax Exception Bar This Action. ................................................................. 10

     1.  The Plaintiffs Seek to Restrain Assessment of a Tax. ......................... 11

     2.  The Judicial Exceptions to the AIA Do Not Apply. ............................ 14

       a.  A § 7422 refund suit provides an alternative legal remedy. ............ 14

       b.  *Mann Construction* does not mean, and the plaintiffs cannot otherwise show, that the United States could not prevail. ................... 16

   B.  Issue Preclusion Also Bars the Plaintiffs' Claims. .................................. 19

   C.  The Plaintiffs Otherwise Cannot Proceed Under the APA. ...................... 20

     1.  The Plaintiffs Cannot Rely on the APA's Waiver of Sovereign Immunity and Have Not Pled the Prerequisites for a Refund Suit. ............................ 20

     2.  The Statute of Limitations Bars the APA Claims. .............................. 22

IV.  CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Aguayo v. Jewell*, 827 F.3d 1213 (9th Cir. 2016)..................................................... 19

*Albert v. Golden*, 998 F.3d 1088 (9th Cir. 2021) ...................................................... 20

*Allen v. Milas*, 896 F.3d 1094 (9th Cir. 2018)......................................................... 21

*Arizona v. Biden*, 31 F.4th 469 (6th Cir. 2022) ....................................................... 18

*Asiana Airlines v. FAA*, 134 F.3d 393 (D.C. Cir. 1998) ......................................... 18

*Biggs v. Quicken Loans, Inc.*, 990 F. Supp. 2d 780 (E.D. Mich. 2014) ............................ 18

*Bob Jones Univ. v. Simon*, 416 U.S. 725 (1974) ........................................... 10, 11

*Cal. Sea Urchin Comm'n v. Bean*, 828 F.3d 1046 (9th Cir. 2016) ........................... 25

*California v. Regan*, 641 F.2d 721 (9th Cir. 1981) ......................................... 10

*CIC Servs., LLC v. IRS*, 141 S. Ct. 1582 (2021) ........................................... passim

*Confederated Tribes & Bands of the Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau*, 843 F.3d 810 (9th Cir. 2016) ........................................... 16

*Dunn & Black, P.S. v. United States*, 492 F.3d 1084 (9th Cir. 2007) ........................... 21

*Enochs v. Williams Packing & Navigation Co., Inc.*, 370 U.S. 1 (1962) ........................ 14

*Govig & Assoc. Inc., et al., v. United States*, No. 19-cv-05185-PHX-SMB, 2020 WL 6048301 (D. Ariz. Oct. 13, 2020) ........................................... 8, 16

*Govig & Assoc. Inc., et al., v. United States*, No. 2:20-cv-02278-DLR (D. Ariz.) ............. 8

*Hansen v. Dep't of Treas.*, 528 F.3d 597 (9th Cir. 2007)....................................... 15

*Heckler v. Chaney*, 470 U.S. 821 (1985)........................................................... 21

*Hohu v. Hatch*, 940 F. Supp. 2d 1161 (N.D. Cal. 2013) ...................................... 20

*Hyatt v. U.S. Pat. & Trademark Off.*, 904 F.3d 1361 (Fed. Cir. 2018)........................... 23

*JEM Broadcasting Co., Inc. v. FCC*, 22 F.3d 320 (D.C. Cir. 1994) ........................... 23, 25

*Mann Constr., Inc. v. IRS*, 539 F. Supp. 3d 745 (E.D. Mich. 2021) ................................ 17

*Mann Constr., Inv. v. United States*, 27 F.4th 1138 (6th Cir. 2022) ........................ passim

*Matter of LaSalle Rolling Mills Inc.*, 832 F.2d 390 (7th Cir. 1987)............................... 16

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ........................... 11

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012). 14

*Perez-Guzman v. Lynch*, 835 F.3d 1066 (9th Cir. 2016)...................................... 23

*Preminger v. Sec'y of Veterans' Affs.*, 517 F.3d 1299 (Fed. Cir. 2008)........................ 25

*Skyworks, Ltd. v. CDC*, 542 F. Supp. 3d 719 (N.D. Ohio 2021).............................. 17, 18

*South Carolina v. Regan*, 465 U.S. 367 (1984)........................................................14

*Stonecipher v. Bray et al.*, 653 F.2d 398 (9th Cir. 1981) ....................................16

*Taylor v. Sturgell*, 553 U.S. 880 (2008) ..............................................................20

*United States v. Bisceglia*, 420 U.S. 145 (1975) .....................................................3

*United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003) .............10

*Utu Utu Gwaitu Paiute Tribe of the Benton Paiute Reservation v. Dep't of Interior*, 766
F. Supp. 842 (E.D. Cal. 1991 ............................................................................23

*Vega v. United States*, 881 F.3d 1146 (9th Cir. 2018) .......................................16

*Wind River Min. Corp. v. United States*, 946 F.2d 710 (9th Cir. 1991)...............22, 24, 25

**Statutes**

5 U.S.C. § 701 .......................................................................................................21

5 U.S.C. § 702 .......................................................................................................21

5 U.S.C. § 704 .......................................................................................................21

26 U.S.C. § 419 .......................................................................................................6

26 U.S.C. § 419A ....................................................................................................6

26 U.S.C. § 6011 .....................................................................................................1

26 U.S.C. § 6111 ...................................................................................................12

26 U.S.C. § 6112 ...................................................................................................12

26 U.S.C. § 6532 .............................................................................................15, 21

26 U.S.C. § 6671 ...................................................................................................11

26 U.S.C. § 6707 ...................................................................................................12

26 U.S.C. § 6707A .........................................................................................passim

26 U.S.C. § 6708 ...................................................................................................12

26 U.S.C. § 7203 ...................................................................................................14

26 U.S.C. § 7421 ...............................................................................................2, 10

26 U.S.C. § 7422 .........................................................................................passim

28 U.S.C. § 2201 ..............................................................................................2,10

28 U.S.C. § 2401 ..............................................................................................3, 22

**Regulations**

26 C.F.R. § 1.6011-4 ..............................................................................4, 6, 8, 19

26 C.F.R. § 1.6011-4T .....................................................................................4

26 C.F.R. § 301.6402-2 ............................................................................15, 21

Federal Register (March 2, 2000)...............................................................4, 19

Notice 2007-83, 2007-45 I.R.B. 960, 2007 WL 3015114 (Nov. 5, 2007) ................passim

**Other Authorities**

H.R. Conf. Rep. 108-755 .................................................................................5

H.R. Rep. 108-548 ..........................................................................................5

# I.    INTRODUCTION

The plaintiffs, an executive recruiting company and its owners, engaged in an abusive tax transaction disguised as an employee benefit plan. To combat such transactions, the IRS, pursuant to authority under 26 U.S.C. § 6011, developed regulations that require taxpayers to report their participation in these transactions. Under the regulations, the IRS can identify these reportable transactions through IRS notices. Notice 2007-83, for instance, identifies certain trust arrangements, purported to be employee benefit plans, as "listed transactions" that participants must report to the IRS. In 26 U.S.C. § 6707A, Congress gave teeth to the regulations governing reportable transactions, including listed transactions, adding to the Internal Revenue Code a penalty for failing to comply with the reporting requirement.

The plaintiffs here failed to report the abusive transaction they engaged in, which Notice 2007-83 identifies as a listed transaction. The IRS thus proposed § 6707A penalties against them for the 2016 and 2017 tax years. The IRS, however, has not actually assessed these penalties. Nor have the plaintiffs paid them. Nevertheless, the plaintiffs seek "rescission" of the proposed penalties because, they claim, the IRS issued Notice 2007-83 in violation of the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* ("APA"). The plaintiffs claim that Notice 2007-83 is subject to the APA's notice and comment requirements, which the IRS did not follow; the Notice does not describe the listed transaction with the requisite specificity; and the IRS issued Notice 2007-83 in an arbitrary and capricious manner. To support their argument, they rely on *Mann Constr., Inc. v. United States*, 27 F.4th 1138 (6th Cir. 2022). In that case, which was a refund action (*i.e.*, the plaintiffs sought refund, under 26 U.S.C. § 7422, of tax penalties they had paid), the Sixth Circuit found that Notice 2007-83 should have gone through the APA's notice and comment procedures.

As explained below, this Court lacks jurisdiction to hear the plaintiffs' claims. Unlike *Mann Construction*, this action is not a refund action, apart from Jeanette Govig's

discrete refund claim for the 2015 tax year.[1]  Rather, it seeks to prevent the IRS from making tax assessments in the first place and collecting on them.  For that reason, the Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421, and the tax exception to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, prohibit the relief the plaintiffs seek.  These provisions bar suits that would have the purpose or effect of restraining the IRS from assessing or collecting taxes or from taking actions necessary to assess or collect taxes.[2]  The Code treats the § 6707A penalty as a "tax."  By seeking rescission of the proposed § 6707A penalties, based on their APA challenge to Notice 2007-83, the plaintiffs plainly seek to restrain the IRS from assessing and collecting that tax.  The Supreme Court's recent decision clarifying the AIA's scope, *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582 (2021), confirms that the AIA bars suits like this one.

Moreover, the limited judicial exceptions to the AIA do not apply here.  These exceptions turn on whether an alternative legal avenue exists and whether the United States has no chance of prevailing on the merits.  First, the plaintiffs have an alternative legal avenue for their claims – a refund action under § 7422, which the plaintiffs in *Mann Construction* used.  In fact, the Ninth Circuit has made clear that a refund action is the proper vehicle for challenging § 6707A penalties based on claims against Notice 2007-83.  *See Interior Glass Sys. v. United States*, 927 F.3d 1081, 1087-88 (9th Cir.), *cert. denied*, 140 S. Ct. 606 (2019).

Second, the plaintiffs cannot show that the United States could not prevail on the merits.  Again, on this point, the plaintiffs would argue that the Sixth Circuit's decision in *Mann Construction* controls here.  In that case, the Sixth Circuit reversed the district court, which had determined that the IRS had not violated the APA in issuing Notice

---

[1] As explained below, the United States agrees that Jeanette Govig is entitled to a refund for a penalty assessed for 2015, although for reasons that do not apply to the proposed assessments against her and the other plaintiffs for 2016 and 2017.

[2] Because, unlike here, the plaintiffs in *Mann Construction* sought a refund of § 6707A penalties that they had paid and made their APA arguments in the context of a refund claim, the AIA and DJA did not bar the action in *Mann Construction*.

2

2007-83. *See Mann Constr.*, 27 F.4th at 1142. In doing so, the Sixth Circuit held that the IRS's process for issuing Notice 2007-83 should have followed the APA's notice and comment procedures, and, because it did not, "we must set [the Notice] aside." *Id.* at 1148. But as explained below, *Mann Construction* is not binding authority in the Ninth Circuit. First, the court in *Mann Construction* did not purport to issue a nationwide vacatur of the Notice, vacatur was not even at issue in that case, and the Sixth Circuit's authority is limited to the Sixth Circuit. Second, the Ninth Circuit has not ruled on whether the IRS's issuance of Notice 2007-83 complied with the APA. And the United States could make at least a colorable claim that it did.

The plaintiffs thus cannot circumvent the AIA's jurisdictional bar. In addition, as explained below, this Court already ruled in a prior action, which these same plaintiffs brought, that the AIA and DJA bar these claims. The plaintiffs are thus precluded from making these claims in this action.

Even if the plaintiffs could circumvent these bars, the APA could not provide an independent basis for their claims because, again, a refund suit would provide them an alternative legal remedy. And in any event, the statute of limitations applicable to APA claims would preclude the plaintiffs' procedural and policy challenges to Notice 2007-83. The statute of limitations for civil actions in 28 U.S.C. § 2401(a) applies to APA challenges. Under § 2401(a), a claim must be brought within six years from when the right of action first accrues, which, in this case, is when the IRS issued the Notice. The IRS issued Notice 2007-83 in 2007. The plaintiffs' APA claims are thus time-barred.

For several reasons, therefore, the plaintiffs' claims are barred. The Court should thus dismiss their claims regarding the proposed § 6707A penalties for 2016 and 2017.

## II.  BACKGROUND

### A.  Statutory and Regulatory Regime

The federal tax system "is based on a system of self-reporting." *United States v. Bisceglia*, 420 U.S. 141, 145 (1975). But as the Supreme Court has observed, "it would be naive to ignore the reality that some persons attempt to outwit the system, and tax

evaders are not readily identifiable." *Id*. To combat this problem, and best employ the IRS's limited enforcement resources, Congress has enacted legislation that grants the IRS broad authority to gather information and requires taxpayers to affirmatively disclose their participation in transactions that could be used to evade taxes. Congress codified this legislation in sections 6011 and 6707A of the Internal Revenue Code.

Section 6011 provides that taxpayers "shall make a return or statement" that includes information as the IRS's "forms or regulations" require. 26 U.S.C. § 6011. Pursuant to this authority, in 2000, Treasury and the IRS developed the regulatory scheme governing reportable transactions, including listed transactions. Treasury issued temporary regulation 26 C.F.R. § 1.6011-4T, requiring corporate taxpayers to disclose to the IRS participation in "reportable transactions," *i.e.*, transactions that are, or could be, used for tax avoidance. A listed transaction is a type of reportable transaction. The temporary regulation defined "listed transaction" as a transaction that "is the same as or substantially similar to one of the types of transactions that the [IRS] has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance as a listed transaction for purposes of section 6011." 26 C.F.R. § 1.6011-4T(b)(2), 65 Fed. Reg. 11205-02 (Mar. 2, 2000). When Treasury issued this temporary regulation, it also published a notice of proposed rulemaking that contained this definition of listed transaction and sought comments from the public. *See* 65 Fed. Reg. 11269-01 (Mar. 2, 2000).

Treasury finalized the temporary regulation in March 2003. *See* 68 Fed. Reg. 10161-01 (Mar. 4, 2003); 26 C.F.R. § 1.6011-4. The final regulation retained the same definition of "listed transaction" as the prior version, to include that the IRS could identify such transactions by notice. *See* 26 C.F.R. § 1.6011-4(b)(2) (2003). The final regulation's preamble does not indicate that the IRS received any comments on the method for designating a listed transaction. *See* 68 Fed. Reg. 10161-01.

The IRS, however, had no mechanism to compel taxpayers to comply with the regulation's disclosure requirements. As a result, in 2004, Congress put into the Code

4

language from the regulation and strengthened it. Congress added § 6707A, giving teeth to the reportable transaction requirements by imposing penalties for failure to comply. *See* Pub. L. No. 108-357, § 811(a) (Oct. 22, 2004) (codified at 26 U.S.C. § 6707A(a)). Also, in § 6707A, Congress incorporated into the Code the regulations on designation and disclosure of reportable transactions, including listed transactions. The Code now defines a "reportable transaction" with reference to the regulation, explicitly granting the IRS authority to identify such transactions: "The term 'reportable transaction' means any transaction with respect to which information is required to be included with a return or statement because, as determined under regulations prescribed under section 6011, such transaction is of a type which the Secretary determines as having a potential for tax avoidance or evasion." 26 U.S.C. § 6707A(c)(1). In addition, the Code now defines a "listed transaction" as "a reportable transaction which is the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction for purposes of section 6011." 26 U.S.C. § 6707A(c)(2).

In enacting these provisions, Congress understood that the notice-based procedure for identifying listed transactions allowed the IRS to act quickly in identifying tax avoidance transactions given the fast-moving nature of the tax shelter industry. Congress not only endorsed the IRS's method for identifying reportable and listed transactions, it provided the IRS flexibility when making such designations. *See* H.R. Conf. Rep. 108-755, at 597 n.462 (Oct. 7, 2004) (explaining that the Secretary may modify, as appropriate, the definitions of "reportable transactions" and "listed transaction," including the definition of "substantially similar"). Likewise, as the Ninth Circuit has observed, by adding the penalty provision, Congress strengthened the IRS's ability to obtain information on tax avoidance transactions through this reporting regime: "Congress added the § 6707A penalty provision in 2004 to encourage voluntary disclosure of listed transactions." *Interior Glass*, 927 F.3d at 1087; *see also* H.R. Rep. 108-548, at 261 (June 16, 2004) (stating that "the best way [for the IRS] to combat tax shelters is to be aware of them").

**B.     IRS Notice 2007-83**

In October 2007, based on this authority, and pursuant to 26 C.F.R. § 1.6011-4(b)(2), the IRS issued Notice 2007-83. *See* 2007-45 I.R.B. 960, 2007 WL 3015114 (Nov. 5, 2007). The Notice identified as listed transactions certain trust arrangements that had been "promoted to small businesses and other closely held businesses as a way to provide cash and other property" to the business owners "on a tax-favored basis." 2007 WL 3015114. Promoters of these arrangements claimed that a business's contributions to the trust would be deductible as "qualified costs" under 26 U.S.C. §§ 419 and 419A, but that the business owners would have no corresponding addition to their taxable income. *Id.*

According to the Notice, under these arrangements, businesses used trusts to create welfare benefit funds that included cash-value life insurance policies. The business would contribute to the trust, which paid the insurance policy premiums, anticipating that after some years the arrangement would terminate and the accumulated cash-value life insurance policies, cash, or other trust property would be distributed to the participating employees. *Id.* The business typically structured the arrangement so that, on termination, the business owners and other key employees would receive, directly or indirectly, all or most of the trust's assets. *Id.*

The Notice identified these arrangements as listed transactions subject to the disclosure requirements of § 6011 and 26 C.F.R. § 1.6011-4 because of their potential as tax avoidance schemes. Typically, in these arrangements, the business would deduct its contributions to the trust (for the premiums paid on the cash-value life insurance policies), thereby reducing the business's taxable income. *See* Notice 2007-83, 2007 WL 3015114. But the business owners, who received the benefit of the paid-in premiums, either would not include the premiums in taxable income or would include significantly less than the premiums paid. *See id.* The arrangements thus invested a business's funds for its owners' benefit and generated current tax deductions for the business but resulted in little or no corresponding taxable income for the owners. *See id.* Transfers to the trust

thus could be, in substance, distributions of dividend income or deferrals of compensation. *See id.* On disclosure of such a transaction, the IRS could examine the business's deductions and possibly seek to include in the business owner's gross income the payments made to the trust. *See id.*

## C. The Plaintiffs' Claims and Procedural History

The plaintiffs' Complaint challenges Notice 2007-83 as violating the APA. The plaintiffs seek a declaration that the Notice is invalid and should be "set aside" and an order directing the IRS to "rescind" the proposed § 6707A assessments against them for 2016 and 2017 for failing to disclose participation in the transaction the Notice identifies. The Complaint also could be construed to seek a declaration that their transaction is not the same as or substantially similar to the transaction the Notice identifies.

Plaintiff Govig & Associates, Inc. ("Govig") is a privately held executive recruiting company. Its only shareholders are trusts associated with the individual plaintiffs, Todd Govig, the company's president, and Jeanette and Richard Govig. Compl. ¶¶ 26-28. The plaintiffs allege that in August of 2019, the IRS assessed against them penalties under § 6707A, for the 2015 tax year, for failure to disclose participation in a transaction described in Notice 2007-83. *Id.* ¶¶ 33-40. As explained more below, the plaintiffs paid these penalties, sought a refund, and, with the exception of Jeanette, received a refund. *See id.* ¶¶ 40-42. They further allege that in October of 2020, the IRS proposed (but did not assess) § 6707A penalties against them for tax years 2016 and 2017. *Id.* ¶¶ 2, 44. The plaintiffs submitted a protest of the proposed penalties to the IRS, requesting an appeal with the IRS Office of Appeals. *Id.* ¶ 46. While they allege that the IRS Appeals Officer "sustained" these penalties (*id.*), the plaintiffs do not allege that the IRS has actually assessed the penalties for 2016 and 2017. Nor do they allege that they have paid these penalties or filed an administrative refund claim with the IRS.

The plaintiffs allege that both the § 6707A penalties assessed and refunded for the 2015 year and those proposed for 2016 and 2017 stem from their failure to disclose participation in a Death Benefit Trust and Restricted Property Trust ("DBT/RPT")

transaction. The IRS determined that the DBT/RPT was a listed transaction under Notice 2007-83. Compl. ¶¶ 1, 33-44. The DBT/RPT is a complicated two-part trust arrangement. *Id.* ¶¶ 30-31. The plaintiffs claim that the DBT/RPT is not the same as or substantially similar to the transaction described in Notice 2007-83. *Id.* ¶ 15. And again, they also claim that Notice 2007-83 did not comply with APA requirements and therefore should be "set aside," and the proposed penalties for 2016 and 2017 should be "rescinded." *Id.* ¶¶ 77, 101, 103.

The plaintiffs made similar claims, which this Court rejected, in an earlier action, *Govig & Assoc. Inc., et al., v. United States*, No. 19-cv-05185-PHX-SMB, 2020 WL 6048301 (D. Ariz. Oct. 13, 2020) ("*Govig I*"). In *Govig I*, the plaintiffs made the same allegations with respect to the § 6707A penalties against them for 2015. They did not, however, seek a refund for payment of those penalties. Rather, they sought to have Notice 2007-83 "set aside" based on the same APA-related allegations they assert here. In *Govig I*, this Court dismissed the plaintiffs' complaint. The Court held that, because the suit's purpose was to restrain the assessment or collection of tax, the AIA and DJA barred the suit. *See Govig I*, 2020 WL 6048301, at *5.

On November 24, 2020, the plaintiffs then brought another action in this Court, *Govig & Assoc. Inc., et al., v. United States*, No. 2:20-cv-02278-DLR (D. Ariz.) ("*Govig II*"), alleging that Notice 2007-83 was deficient because it violated the APA. This time the plaintiffs sought a refund of payments they made for the § 6707A penalties for 2015, pursuant to 26 U.S.C. § 7422. The United States agreed in that case that Govig, Todd, and Richard were entitled to refunds, although not for the reasons the plaintiffs alleged. In 2015, the plaintiffs had not yet participated in the listed transaction described in Notice 2007-83, as "participation" is defined in the relevant regulation, 26 C.F.R. § 1.6011-4(c)(3)(i)(A). They therefore should not have been subject to § 6707A penalties for failing to report their participation in that year. Jeanette, on the other hand, was not entitled to a refund in *Govig II* because, unlike the others, she had not filed an administrative refund claim before filing suit. The IRS thus had no basis for issuing her a

8

refund, and the Court lacked jurisdiction over her claim. The parties entered a stipulation in which the United States agreed to issue refunds to Govig, Todd, and Richard for § 6707A penalty payments for the 2015 year, and Jeanette's refund claim for 2015 would be dismissed. The stipulation made clear that the United States did not otherwise concede the complaint's allegations, including those pertaining to any deficiency in Notice 2007-83. *See Govig II*, Doc. 19. This Court entered judgment based on the stipulation. *See id.* Doc. 20.[3]

In the current action, Jeanette again makes a claim for refund of her payment on the § 6707A penalty for 2015. Because she now has filed an administrative claim for refund with the IRS and otherwise meets the requirements for this Court's jurisdiction over that claim, the United States agrees she should receive a refund on the same basis as the other plaintiffs in *Govig II*. Her refund claim for the penalty for 2015 is thus essentially moot. The only claims before the Court, therefore, are the same APA-related claims against Notice 2007-83 that the plaintiffs asserted in *Govig I*, which they allege justify "rescission" of the proposed § 6707A penalties against them for 2016 and 2017. Specifically, the plaintiffs claim that Notice 2007-83 is subject to the APA's notice and comment requirements. Compl. ¶¶ 47-64. They claim the Notice does not describe the listed transaction with the requisite specificity. *Id.* ¶¶ 65-80. And they claim the IRS issued Notice 2007-83 in an arbitrary and capricious manner. *Id.* ¶¶ 81-88. Their Complaint also alleges, at one point, that the DBT/RPT is not the same as or substantially similar to the transaction described in the Notice. *Id.* ¶ 15.

## III.    ARGUMENT

Because the plaintiffs seek injunctive relief with respect to federal taxes, and have not exhausted their administrative remedies and brought a refund suit, this Court lacks

---

[3] The plaintiffs suggest, incorrectly, that the judgment in *Govig II* means the DBT/RPT is different from the transaction identified in Notice 2007-83. *See* Compl. ¶ 15. The judgment in *Govig II* did not state that; the United States stipulated only on the basis stated above.

jurisdiction to hear their claims. The Court has no jurisdiction over a suit against the United States unless Congress has made "a clear statement" waiving immunity, and the plaintiffs have made "a claim falling within the terms of the waiver." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003). Such is not the case here. As explained below, the AIA and the DJA's tax exception prohibit claims for injunctive relief with respect to federal taxes and thus bar this action. Moreover, the judicial exceptions to this bar do not apply here. A refund suit would provide the plaintiffs an alternative legal remedy, and they cannot show that the United States could not prevail on the merits. And because this Court already determined in *Govig I* that the AIA bars the same claims the plaintiffs make here, issue preclusion also bars those claims.

Moreover, the APA would not provide an independent basis for jurisdiction over those claims, given the availability of a refund suit. The plaintiffs, however, have not pled the jurisdictional prerequisites for a refund suit regarding the proposed penalties for 2016 and 2017. Their claims thus do not fall within a waiver of immunity. In addition, no matter what type of suit the plaintiffs bring, their procedural and policy-based APA claims are time-barred under the relevant statute of limitations.

The Court should thus dismiss the plaintiffs' claims.

## A.    The AIA and the DJA's Tax Exception Bar this Action.

The AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421. Likewise, the DJA provides that a Court "may declare the rights and other legal relations of any interested party seeking" a declaration "except with respect to Federal taxes." 28 U.S.C. § 2201. The DJA's tax exception is "at least as broad" as the AIA. *California v. Regan*, 641 F.2d 721, 723 (9th Cir. 1981) (citing *Bob Jones Univ. v. Simon*, 416 U.S. 725, 732-33 n.7 (1974)). Together, these provisions protect "the Government's ability to collect a consistent stream of revenue" by requiring taxpayers to fully pay their liabilities before challenging them in District Court. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519,

543 (2012) ("NFIB"); *see also Bob Jones*, 416 U.S. at 736-37 (AIA focuses on "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, and to require that the legal right to the disputed sums be determined in a suit for refund") (internal quotes omitted).[4]  Because, as explained below, the plaintiffs seek rescission of the proposed § 6707A penalties, they plainly seek to restrain tax assessment and collection.  Moreover, none of the judicial exceptions to the AIA applies here.  The AIA thus bars this action.

### 1.    The Plaintiffs Seek to Restrain Assessment of a Tax.

The § 6707A penalty is considered a tax under the Internal Revenue Code and, therefore, for AIA purposes.  *See* 26 U.S.C. § 6671; *see also CIC Servs.*, 141 S. Ct. at 1589 (the Code deems civil penalties for failing to comply with reportable transaction requirements to be taxes "as the [AIA] uses that term") (citing *NFIB*, 567 U.S. at 544).  To determine whether the plaintiffs' suit is "for the purpose of restraining the assessment or collection" of that tax, and thus barred under the AIA, the Court should "inquire not into [the] taxpayer's subjective motive, but into the action's objective aim – essentially, the relief the suit requests."  *CIC Servs.*, 141 S. Ct. at 1589.  As the Supreme Court puts it, the AIA "kicks in when the target of a requested injunction is a tax obligation – or stated in the [AIA's] language, when that injunction runs against the 'collection or assessment of a tax.'"  *Id.* at 1590.

The plaintiffs' action plainly seeks injunctive relief that "runs against," i.e., restrains, the assessment and collection of the § 6707A tax penalty.  Based on their allegations that the IRS violated the APA in issuing Notice 2007-83, the plaintiffs seek "rescission" of the proposed § 6707A penalties for 2016 and 2017, as well as relief from "collection of the penalties."  In other words, they seek to enjoin the IRS from assessing these penalties and collecting on them.  Because this action seeks injunctive relief against the § 6707A tax penalty, it falls squarely within the AIA's prohibition.  *See CIC Servs.*,

---

[4] Given that the DJA's tax exception is at least as broad as the AIA, this brief focuses on the AIA, although the same arguments apply based on the DJA's tax exception.

141 S. Ct. at 1590 ("[A] suit seeking injunctive relief against a tax falls squarely within the literal scope of the [AIA].") (quoting *Bob Jones*, 416 U.S. at 732) (internal quote and alterations omitted).

Considering the Court in *CIC Services* ultimately found that the AIA's prohibition did not apply in that action, the plaintiffs may argue that *CIC Services* compels the same result here. They would be wrong. *CIC Services* involved a challenge, under the APA, to the reporting requirement for material advisors, not taxpayer participants in reportable transactions. Unlike here, the relief sought in *CIC Services* targeted the reporting requirement. It did not target the tax penalty for failing to comply with the requirement. And the facts in *CIC Services* otherwise differ in significant respects from those here.

In *CIC Services*, the plaintiff, a "material advisor," sued to enjoin the reporting requirements for material advisors with respect to micro-captive insurance transactions, which IRS Notice 2016-66 identifies as reportable transactions. A material advisor is an individual or entity that earns income from providing taxpayers "aid, assistance, or advice" on a reportable transaction. 26 U.S.C. § 6111(b)(1)A). Material advisors must file a disclosure statement for such transactions they promote, maintain a list of clients, and furnish that list to the IRS upon request. *See* §§ 6111, 6112. Section 6707 imposes a penalty for failing to file the disclosure statement; § 6708 imposes a penalty for failing to produce the client list. Like the § 6707A penalty at issue here, the §§ 6707 and 6708 penalties are considered taxes for AIA purposes. *See CIC Servs.*, 141 S. Ct. at 1589.

The material advisor in *CIC Services*, however, did not face these tax penalties for violating these requirements. Unlike the plaintiffs here, it brought suit before it was required to report anything. *See id.* at 1588. Its suit thus focused solely on the reporting requirements: "CIC alleges that the Notice is procedurally and substantively flawed; it brings no legal claim against the separate statutory tax. And CIC's complaint asks for injunctive relief from the Notice's reporting rules, not from any impending or eventual tax obligation." *Id.* at 1590. Moreover, the Court emphasized that "CIC stands nowhere near the cusp of tax liability: Between the upstream Notice and the downstream tax, the

12

river runs long." *Id.* at 1591. The Court thus found it "hard to characterize this suit's purpose as enjoining a tax." *Id.*

In contrast, here, the plaintiffs stand precisely at the cusp of tax liability. They have already failed to comply with the reporting requirement; the IRS already has proposed § 6707A assessments against them. There are not several steps between the reporting rule and the statutory tax penalty, as was the case in *CIC Services*. Moreover, in this action, the suit does not target the reporting requirement, or, as the *CIC* Court calls it, the "upstream duty." Rather, unlike in *CIC Services*, the plaintiffs here challenge the "downstream tax." *Id.* Their suit plainly seeks injunctive relief from the tax obligation arising from violating the duty.

*CIC Services* also focused on what the Court viewed as the burden material advisors may face in complying with the reporting requirements. Any such burden is not an issue in this case. Unlike taxpayers (such as the plaintiffs), who can face tax liability for understating their income by participating in a reportable transaction, material advisors face no such income tax liability. They face only the tax penalties for failing to report their role as a material advisor in a reportable transaction. And, according to the Court, the reporting requirements for material advisors can involve "significant time and expense." *Id.* at 1591. As the Court saw it, therefore, the compliance costs from which the material advisor sought relief in *CIC Services* were unconnected to, and possibly greater than, any potential tax liability. *See id.*; *id.* at 1594 (Sotomayor, J., concurring). In contrast, Justice Sotomayor noted, taxpayers who participate in reportable transactions (like the plaintiffs here) may incur less expense than their tax advisors "in collecting and reporting their own financial information." *Id.* at 1594-95 (Sotomayor, J., concurring). And regardless of whether material advisors or participants actually face a significant reporting burden, in this case, the plaintiffs did not comply with the reporting requirement, so did not face any associated burden. Moreover, their suit does not seek relief from that burden. It seeks relief from the proposed § 6707A tax penalty.

13

Finally, the Court in *CIC Services* found that the risk of facing misdemeanor criminal liability for failing to comply with the reporting requirements weighed against the AIA's application there. Under 26 U.S.C. § 7203, any person who willfully fails to provide required information to the IRS could face a misdemeanor criminal charge. The Court observed that, if the AIA barred the suit in *CIC Services*, the only way for the plaintiff there to obtain relief from the reporting requirements would be to violate the requirements, incur the civil penalty for doing so, pay the penalty, and sue for a refund, while, in the process, risking the misdemeanor charge. *See* 141 S. Ct. at 1592. In contrast, here the plaintiffs already have violated the reporting requirement, face proposed civil penalties, and, if there is any risk of criminal sanctions, they already incurred that risk.[5] Unlike the plaintiff in *CIC Services*, therefore, the plaintiffs here would incur no additional risk in bringing a refund action to assert their claims.

The decision in *CIC Services* thus applied to a plaintiff in a different posture, with different circumstances, and seeking different relief than the plaintiffs here. The analysis underlying the decision, however, supports the conclusion that, because the plaintiffs here seek injunctive relief for proposed tax assessments, the AIA bars this action.

### 2. The Judicial Exceptions to the AIA Do Not Apply.

Moreover, the judicial exceptions to the AIA, based on *South Carolina v. Regan*, 465 U.S. 367 (1984), and *Enochs v. Williams Packing & Navigation Co., Inc.*, 370 U.S. 1 (1962), cannot save the plaintiffs' claims. As explained below, neither exception applies.

### a. A § 7422 refund suit provides an alternative legal remedy.

*Regan* recognized an exception to the AIA in cases where Congress has "not provided an alternative remedy" for taxpayers to pursue their claims. *See* 465 U.S. at

---

[5] The plaintiffs do not allege they face, or have been investigated for, criminal liability. Moreover, in the Ninth Circuit, to bring a pre-enforcement claim regarding criminal liability, the plaintiffs must allege a "genuine threat of imminent prosecution." *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012). The plaintiffs have not done so here.

14

378.  That exception does not apply here because Congress provided a refund suit under 26 U.S.C. § 7422 as the exclusive remedy for the plaintiffs' claims.  The plaintiffs in *Mann Construction*, for instance, brought similar claims challenging Notice 2007-83 through a refund suit.  *See Mann Constr.*, 27 F.4th at 1143.  And in *Interior Glass*, the Ninth Circuit made clear that a refund suit is the proper vehicle for challenging § 6707A penalties related to Notice 2007-83.  As the Ninth Circuit stated, the "important objective" of "voluntary disclosure of listed transactions" under Notice 2007-83 "could be jeopardized if full-scale pre-deprivation hearings and court cases are required whenever the government attempts to collect the authorized penalties."  927 F.3d at 1087 (internal quotes omitted).

The plaintiffs seek this kind of pre-deprivation hearing with respect to the proposed § 6707A penalties for 2016 and 2017.  But if they may proceed at all, they must do so through the specific mechanism Congress provided for challenging tax liabilities, *i.e.*, a § 7422 refund suit.  To bring a refund suit, they must first pay the tax, file an administrative claim for credit or refund with the IRS, and then bring the action in district court if the IRS denies the claim or takes no action within a specific period.  *See* 26 U.S.C. § 6532(a)(1); 26 C.F.R. § 301.6402-2.  The plaintiffs have not taken these steps.  Nothing, however, would preclude them from doing so once the § 6707A penalties for 2016 and 2017 are assessed.  After all, they followed these steps in *Govig II* to challenge the § 6707A assessments for 2015 and did so again to bring Jeanette's refund claim in this action.  That they have not availed themselves of the remedy Congress has provided to challenge the penalties for 2016 and 2017 does not mean they have no remedy.  *See Hansen v. Dep't of Treas.,* 528 F.3d 597, 602 (9th Cir. 2007) (that taxpayer would prefer not to bring a refund suit did not mean a refund suit was an inadequate remedy).

As explained in part C.2. below, the statute of limitations for APA claims would bar the plaintiffs' procedural challenges to Notice 2007-83 in any suit, including a refund suit.  But the fact that a plaintiff would not prevail on all its claims using the remedy Congress provided does not mean the remedy is not available or that the *Regan* exception

would apply. *See Govig I*, 2020 WL 6048301, at *6 ("The *Regan* exception applies when a party has been provided with no alternative remedy, but not where a party simply believes its remedy is inadequate."); *Matter of LaSalle Rolling Mills Inc.*, 832 F.2d 390, 394 n.9 (7th Cir. 1987) ("That the remedy available to LaSalle may be inadequate in this particular case does not change the fact that there is an alternative remedy. . . . Nor does it allow us to abrogate the [AIA.]"); *cf. Vega v. United States*, 881 F.3d 1146, 1155 (9th Cir. 2018) (in context of *Bivens* claim, stating that because a plaintiff does "not adequately plead, or ultimately have, a meritorious claim" does not mean the plaintiff "did not have access to alternative or meaningful remedies"); *see also Confederated Tribes & Bands of the Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau*, 843 F.3d 810, 815 & n.2 (9th Cir. 2016) (inquiry on *Regan* exception focuses not on whether the specific plaintiff can obtain review but whether *a* party could obtain review of the same claims).

### b. *Mann Construction* does not mean, and the plaintiffs cannot otherwise show, that the United States could not prevail.

Likewise, the *Williams Packing* exception does not apply. *Williams Packing* held that the AIA does not bar a suit where the taxpayer can show, in a stringent test, that both of these prongs exist: (1) under no circumstances could the United States ultimately prevail, and (2) "equity jurisdiction" otherwise exists, *i.e.*, the taxpayer has no alternative remedy at law and denial of injunctive relief would cause immediate, irreparable harm. *See Stonecipher v. Bray, et al.*, 653 F.2d 398, 401 (9th Cir. 1981) (explaining *Williams Packing* prongs). The plaintiffs cannot satisfy either prong, let alone both.

As to the second prong, as discussed above, Congress provided taxpayers like the plaintiffs a remedy via a refund suit. For that reason, denial of injunctive relief would not result in irreparable harm. *See Stonecipher*, 653 F.2d at 401 ("[B]ecause Stonecipher can sue for a tax refund under I.R.C. § 7422, he has failed to satisfy the exception's second prong, requiring a showing of irreparable harm if injunctive relief is denied."). The

presence of such a remedy, standing alone, renders the *Williams Packing* exception inapplicable.

Yet the plaintiffs also cannot meet the first prong. The plaintiffs allege, in essence, that the United States cannot ultimately prevail because the Sixth Circuit's decision in *Mann Construction* controls here. Again, in that case, the Sixth Circuit reversed the district court, which had determined that the IRS had not violated the APA in issuing Notice 2007-83. *See* 27 F.4th at 1142. In doing so, the Sixth Circuit held that the IRS's process for issuing Notice 2007-83 should have followed the APA's notice and comment procedures, and, because it did not, "we must set [the Notice] aside." *Id.* at 1148. The *Mann Construction* decision, however, is not binding authority in the Ninth Circuit, which has not addressed the questions at issue.

As an initial matter, and contrary to what the plaintiffs suggest, the court in *Mann Construction* did not purport to issue a nationwide vacatur of the Notice. Nationwide relief was not even at issue there. In bringing their suit for refund of § 6707A penalties, the *Mann* plaintiffs initially sought injunctive and declaratory relief with respect to the Notice in addition to monetary relief through a refund. They dropped the injunctive and declaratory relief claims, however, and the district court formally dismissed them. *See Mann Constr., Inc. v. IRS*, 539 F. Supp. 3d 745, 755-56 (E.D. Mich. 2021). That left the claim for refund of § 6707A penalties. The district court denied that claim because, it held, the IRS had not violated the APA in issuing Notice 2007-83. *See id.* at 755, 763. In reversing the district court's decision, the Sixth Circuit did not resurrect the long-dismissed injunctive and declaratory relief claims. Nor did it remand with instructions to grant any relief beyond that applicable to the *Mann* plaintiffs. *See* 27 F.4th at 1148.

Even if a request for nationwide relief had been on the table, there is no reason to assume the Sixth Circuit would have granted it. While some courts have interpreted § 706 of the APA to mean that vacatur of an agency regulation applies nationwide, the Sixth Circuit has not adopted that rule. *See Skyworks, Ltd. v. CDC*, 542 F. Supp. 3d 719, 734 (N.D. Ohio 2021) (summarizing recent case law). In fact, Judge Sutton, the chief

judge of the Sixth Circuit and the author of *Mann Construction*, has questioned whether the APA even permits nationwide vacatur: "The [APA], it is true, says that a reviewing court may 'hold unlawful and set aside' agency actions that violate the law. But that raises a question . . . . whether Congress meant to upset the bedrock practice of case-by-case judgments with respect to the parties in each case or create a new and far-reaching power through this unremarkable language." *Arizona v. Biden*, 31 F.4th 469, 484 (6th Cir. 2022) (Sutton, J., concurring). Courts within the Sixth Circuit have raised similar doubts on authority for nationwide vacatur. *See*, *e.g.*, *Skyworks*, 542 F. Supp. 3d at 735-36 (confining relief to parties in case); *Biggs v. Quicken Loans, Inc*., 990 F. Supp. 2d 780, 784-85 (E.D. Mich. 2014) ("[T]he precedent and practice of federal judicial review of agency action strongly suggests that such review proceeds on a circuit-by-circuit basis, just as judicial review of an ordinary statute would.").

 *Mann Construction* thus neither controls here nor deprives a Ninth Circuit court of authority to independently decide the same claims *Mann* addressed and issues in this case that *Mann* did not address. The Ninth Circuit, for instance, has not ruled on whether, in issuing Notice 2007-83, the IRS complied with the APA. In the only case in which the Ninth Circuit addressed Notice 2007-83, it did not identify any deficiency in the Notice. *See Interior Glass*, 927 F.3d at 1087-88.

 *Mann Construction* otherwise does not mean that under no circumstances could the United States prevail on the merits. To the contrary, considering the district court in that case held that the IRS did not violate the APA in issuing Notice 2007-83, the United States obviously has a chance to prevail on the merits. In that case, the district court found that "the text, structure, and history of section 6707A and related Treasury regulations 'express [Congress's] clear intent that APA notice and comment procedures need not be followed.'" *Mann Constr.*, 539 F. Supp. 3d at 761 (quoting *Asiana Airlines v. FAA*, 134 F.3d 393, 398 (D.C. Cir. 1998)). It noted that, in enacting § 6707A, Congress "not only added penalties for the failure to disclose reportable transactions, but defined 'listed transaction' by reference to Treasury regulations that allow the IRS to

18

identify listed transactions by 'notice, regulation, or other form of published guidance.'" *Id.* (quoting § 6707A). Moreover, "[h]ad Congress intended to limit the IRS to ordinary rulemaking, it could have qualified its reference to the regulations prescribed under section 6011." *Id.* The court thus held that Notice 2007-83 was not subject to notice and comment procedures. *See id.* at 763.

Moreover, a key point the court in *Mann Construction* did not make is that the regulation that defines "listed transaction," and states that the IRS can identify such a transaction by Notice, *did* go through notice and comment procedures. *See* 26 C.F.R. § 1.6011-4(b)(2) (2003); 68 Fed. Reg. 10161-01. Nor did *Mann* consider the statute of limitations (discussed in C.2. below). And the plaintiffs' other APA claims against the Notice face an even steeper battle. For instance, their claim that the IRS acted arbitrarily and capriciously is belied by the Notice itself, which provides a detailed explanation for the IRS's position regarding the transactions at issue. *See generally Aguayo v. Jewell*, 827 F.3d 1213, 1226 (9th Cir. 2016) (arbitrary and capricious standard is "highly deferential; the agency's decision is entitled to a presumption of regularity, and we may not substitute our judgment for that of the agency"). And their claim that the Notice is impermissibly vague runs counter to the Ninth Circuit's conclusion in *Interior Glass* that a "'person of ordinary intelligence' could determine which transactions are substantially similar to the listed transaction identified in Notice 2007-83." 927 F.3d at 1085.

For these reasons, the plaintiffs cannot show that under no circumstances could the United States prevail, and thus cannot meet either prong of the *Williams Packing* test. The judicial exceptions to the AIA thus do not apply here. The AIA bars this action.

**B.    Issue Preclusion Also Bars the Plaintiffs' Claims.**

In addition, in *Govig I*, this Court already held that the AIA bars the claims that the plaintiffs assert here. *See* 2020 WL 6048301, at *5. The plaintiffs are precluded from relitigating the same issue here.

Issue preclusion prevents "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment."

*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  Issue preclusion applies where a prior proceeding (1) involved an identical issue; (2) ended in a final judgment on the merits; and (3) included the party against whom preclusion would apply.  *See Albert v. Golden*, 998 F.3d 1088, 1093 (9th Cir. 2021).

The relevant facts satisfy each of these elements.  In this case and in *Govig I*, the parties are identical.  The plaintiffs in this case, in challenging their liability for § 6707A penalties for 2016 and 2017, make the same APA-related claims against Notice 2007-83 that they made in *Govig I* in challenging their liability for the penalties for 2015.  And this Court issued a final judgment in *Govig I* that it lacked jurisdiction to hear those claims because the AIA barred them.  While that judgment did not reach the merits, issue preclusion applies to a jurisdictional issue if, like here, that issue was actually litigated and necessary to the prior determination.  *See Hohu v. Hatch*, 940 F. Supp. 2d 1161, 1168-69 (N.D. Cal. 2013) (dismissing complaint because parties litigated same issue of subject matter jurisdiction in prior suit).  The plaintiffs thus cannot relitigate jurisdiction in this action.

**C.    The Plaintiffs Otherwise Cannot Proceed Under the APA.**

Even if issue preclusion and the AIA did not bar this action, the plaintiffs could not proceed under the APA.  The APA cannot provide an independent basis for jurisdiction over their claims, given the availability of a refund suit.  The plaintiffs, however, have not pled the jurisdictional prerequisites for a refund suit regarding the proposed penalties for 2016 and 2017.  Their claims thus do not fall within a waiver of sovereign immunity.  And in any event, regardless of the type of suit, the plaintiffs' APA claims would be time-barred under the six-year statute of limitations.

**1.    The Plaintiffs Cannot Rely on the APA's Waiver of Sovereign Immunity and Have Not Pled the Prerequisites for a Refund Suit.**

The plaintiffs assert jurisdiction under 26 U.S.C. § 7422 for Jeanette's refund claim for the § 6707A penalty for 2015.  Compl. ¶ 11.  For the remainder of their claims, *i.e.*, those with respect to the proposed § 6707A penalties for 2016 and 2017, they assert

jurisdiction under the APA, 5 U.S.C. § 702. *Id.* "It is beyond question," however, "that the APA does not provide an independent basis for subject matter jurisdiction in the district courts." *Allen v. Milas*, 896 F.3d 1094, 1099 (9th Cir. 2018) (internal quotes omitted). Moreover, "before any review at all may be had [under the APA], a party must first clear the hurdle of § 701(a)." *Heckler v. Chaney*, 470 U.S. 821, 828 (1985). Section 701(a) provides that the APA's chapter on judicial review applies except to the extent that "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Here, as explained above, the AIA and the DJA preclude judicial review of the plaintiffs' claims.

Moreover, under § 704 as well, the plaintiffs cannot bring their challenge under the APA. The APA permits judicial review only with respect to agency actions "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. In this case, as discussed above, a refund suit under 26 U.S.C. § 7422 would provide the plaintiffs a legal remedy to address their claims.[6] Under no circumstances, therefore, can the Court review the plaintiffs' claims under the APA in this action.

While a § 7422 refund suit would provide a remedy, the plaintiffs have not pled that they have met the jurisdictional requirements for a refund suit. Again, as a prerequisite to such a suit, § 7422 requires that a taxpayer first pay the tax, then file an administrative claim for credit or refund with the IRS. *See* 26 C.F.R. § 301.6402-2. If the IRS denies the claim or six months elapse without an IRS response, the taxpayer can bring suit in the district court. *See* 26 U.S.C. § 6532(a)(1). If a taxpayer does not exhaust this administrative remedy before bringing a refund suit, the court lacks jurisdiction to hear it. *See* 26 U.S.C. § 7422(a) and 26 C.F.R. § 301.6402-2(b)(1); *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1090-91 (9th Cir. 2007) (stating that "§ 7422(a)'s requirement that a person first file an administrative claim before commencing an action

---

[6] A procedurally sound refund suit would provide the plaintiffs an avenue for bringing timely claims, such as their claim that the DBT/RPT is not covered under Notice 2007-83 (to the extent they allege facts to support that claim). No type of suit, however, would provide them an avenue for bringing claims barred under the statute of limitations.

against the United States in district court is a statutory limitation on Congress's express waiver of sovereign immunity pursuant to § 1346(a)(1)"). Because, in this case, the plaintiffs have not pled that they exhausted their administrative remedy before bringing this action, even if this action could be construed as a § 7422 refund suit on the proposed § 6707A penalties for 2016 and 2017, the Court would have no jurisdiction over it.

## 2. The Statute of Limitations Bars the APA Claims.

In any event, the statute of limitations on the plaintiffs' APA claims against Notice 2007-83 bars those claims. Because their claims challenge issuance of the Notice on procedural and policy grounds, they cannot circumvent this bar.

The six-year statute of limitations for civil actions in 28 U.S.C. § 2401(a) applies to APA claims. *See Wind River Min. Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991). Under § 2401(a), "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." In *Wind River*, the Ninth Circuit clarified when a right of action under the APA first accrues. First, it held that a challenge based on either a "mere procedural violation" or on policy grounds must be brought within six years of the agency's original action. 946 F.2d at 715. It stressed that the basis for bringing procedural and policy challenges "will usually be apparent to any interested citizen within a six-year period following promulgation of the decision." *Id.* Second, the court held that "substantive challenge[s] to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of the disputed decision to the challenger" regardless of when the agency made the decision. *Id.*

In this case, the plaintiffs allege only procedural or policy challenges to Notice 2007-83. They have not stated a "substantive" challenge alleging specific harm that resulted from the Notice's application to them specifically. Count One, for instance, alleges that the Notice should have gone through the notice and comment process, which would be a procedural APA violation. *See Hyatt v. U.S. Pat. & Trademark Off.*, 904 F.3d 1361, 1372 (Fed. Cir. 2018) (lack of notice and comment claim alleges procedural APA

22

violation); *Utu Utu Gwaitu Paiute Tribe of the Benton Paiute Reservation v. Dep't of Interior*, 766 F. Supp. 842, 844 (E.D. Cal. 1991) (same). The right of action on this claim thus first accrued on the date the IRS published Notice 2007-83. The IRS published Notice 2007-83 on November 5, 2007. *See* 2007 WL 3015114. The plaintiffs brought this action on April 8, 2022, more than six years from the publication date. Count One, therefore, is time-barred. *See Perez-Guzman v. Lynch*, 835 F.3d 1066, 1078-79 (9th Cir. 2016) (procedural APA challenges must be brought within six years of rule's issuance); *JEM Broadcasting Co., Inc. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994) ("[T]he failure to provide notice and comment is a ground for complaint that is or should be fully known to all interested parties at the time the rules are promulgated.").

Count Three essentially restates Count One, alleging that the IRS acted arbitrarily and capriciously by issuing the Notice without notice and comment. In addition, Count Three alleges that the IRS did not state adequate reasons, and the administrative record had insufficient facts, to justify the Notice. The Ninth Circuit has found that claims of an agency's failure to adequately explain or justify a rule are procedural. *See Perez-Guzman*, 835 F.3d at 1077. Count Three thus alleges a procedural APA violation. For that reason, like Count One, Count Three is time-barred.

Unlike Counts One and Three, Count Two does not turn on notice and comment. Instead, Count Two alleges that the Notice fails to clearly describe the transactions that it targets. Yet like Counts One and Three, Count Two states a procedural or general policy challenge to Notice 2007-83, not a "substantive" challenge involving the Notice's specific application to the plaintiffs. In Count Two, the plaintiffs suggest that the "final agency action" they challenge is the issuance of the Notice itself, not its application to them. Compl. ¶ 76. They complain that the Notice's supposed lack of specificity violates "basic notions of due process" and causes "undue confusion." They assert that because of the Notice's supposed vagueness, taxpayers in general "will be forced to make disclosures required by Notice 2007-83 lest they subject themselves to substantial

penalties." *Id.* ¶ 70.  Yet they do not allege they made the required disclosure nor that they themselves have been penalized.

Neither do the plaintiffs explain how the Notice's supposed vagueness injured them in particular.  Their only specific criticism of the Notice's language is that it purportedly changes the definition of "qualified costs."  But they do not allege that any such change harmed them or allege that the DBT/RPT would not qualify as a listed transaction but for that definition.  They assert that they have been "affected or aggrieved" by the Notice's promulgation and have sustained "actual damages," but do not explain how they have been harmed or what those damages are, given they have not yet paid any penalties for 2016 and 2017.  Compl. ¶¶ 74, 78.  Indeed, when the plaintiffs filed their Complaint, the IRS had not assessed § 6707A penalties for any year but 2015, for which the plaintiffs have received, or in Jeanette's case will receive, a refund.

For these reasons, Count Two does not state a substantive challenge to Notice 2007-83 as the Ninth Circuit has defined "substantive," *i.e.*, with respect to the Notice's specific application to the plaintiffs.  *See Wind River*, 946 F.2d at 715.  Rather, Count Two challenges the policy determination to require taxpayers to disclose their participation in transactions with the potential for tax abuse, as well as the words the IRS chose to use.  Count Two thus states a facial, policy-based challenge to the Notice under the APA.  For that reason, the right of action on Count Two first accrued on the date the IRS published Notice 2007-83.  *See id.*  Like Counts One and Three, therefore, Count Two is time-barred.

The six-year statute of limitations thus bars each of the plaintiffs' APA claims given that each of those claims first accrued when the IRS published Notice 2007-83 in 2007.  It makes no difference whether or not the plaintiffs knew of the Notice's publication at the time or engaged in the transaction at issue within six years of the Notice's publication.  Any interested party, including a material advisor who promoted a transaction covered under the Notice, could have challenged the Notice within six years

of its publication.[7]  As the Ninth Circuit has stated, the grounds for policy or procedural challenges to a rule "will usually be apparent to *any* interested citizen within a six-year period following promulgation."  *Wind River,* 946 F.2d at 715 (emphasis added).

Moreover, this rule serves the interest of repose.  A contrary rule would permit challenges to the procedures used to promulgate regulations decades ago in the context of any enforcement challenge.  The Ninth Circuit and other courts have emphasized the need for finality and repose: "The government's interest in finality outweighs a late-comer's desire to protest the agency's action as a matter of policy or procedure."  *Wind River,* 946 F.2d at 715; *see also Cal. Sea Urchin Comm'n v. Bean*, 828 F.3d 1046, 1050 (9th Cir. 2016) ("We have held that a statute of limitations may run against a plaintiff even if it is not injured until more than six years after the relevant agency action became final."); *Preminger v. Sec'y of Veterans' Affs.*, 517 F.3d 1299, 1307 (Fed. Cir. 2008) (rejecting theory that failure to engage in notice and comment rulemaking is a "continuing violation" because, if that were the case, "there effectively would be no statute of limitations because the injury would always be ongoing"); *JEM Broadcasting*, 22 F.3d at 326 ("[S]ome parties – such as those not yet in existence when a rule is promulgated – never will have the opportunity to challenge the procedural lineage of rules that are applied to their detriment.  In our view, the law countenances this result because of the value of repose.").

## IV.    CONCLUSION

The AIA and DJA bar the plaintiffs' claims.  Issue preclusion bars them as well.  Moreover, the APA would not provide a jurisdictional basis for the plaintiffs' claims.  And in any event, the statute of limitations bars the plaintiffs' procedural and policy-based APA claims.

For these reasons, the United States respectfully requests that the Court dismiss the plaintiffs' claims.

---

[7] In *CIC Services*, for example, a material advisor challenged Notice 2016-66 within six years of its publication.  *See CIC Servs.,* 141 S. Ct. at 1588.

25

Dated: July 25, 2022                        Respectfully submitted:

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Charles J. Butler*
CHARLES J. BUTLER
Assistant Chief, CTS-Western
E. CARMEN RAMIREZ
Trial Attorney
Tax Division, U.S. Department of Justice

*Counsel for the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2022, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to counsel for all parties that have appeared in this action.

*/s/ Charles J. Butler*
CHARLES J. BUTLER
Assistant Chief, CTS-Western
Tax Division, U.S. Department of Justice