DAVID A. HUBBERT
Deputy Assistant Attorney General

CHARLES J. BUTLER (DC Bar 468754)
Assistant Chief, CTS-Western
E. CARMEN RAMIREZ (DC Bar 975331)
Trial Attorney
Tax Division, U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044
Telephone:   202-514-6062 (Butler)
                       202-616-2885 (Ramirez)
Facsimile:    202-307-0054
Email:         Charles.J.Butler@usdoj.gov
                   E.Carmen.Ramirez@usdoj.gov

*Counsel for the United States of America*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Govig & Assocs., Inc., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>United States of America, et al.,<br><br>        Defendants. | Case No. 2:22-cv-00579-PHX-DGC<br><br>**UNITED STATES' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**Oral Argument Requested** |

The United States of America replies to the plaintiffs' opposition to its motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 2

I.    Unlike *CIC*, this Action Targets a Tax and Is Thus Barred by the AIA. ................ 2

II.   *Mann* Does Not Provide a Basis for an Exception to the AIA. ........................... 4

    A.    A refund action would provide a remedy and obviate any harm. .................... 4

    B.    *Mann* does not mean the United States could not prevail. ............................ 5

III.  The APA Provides No Basis for the Plaintiffs' Claims. ................................... 7

    A.    The plaintiffs ignore the APA's jurisdictional requirement in § 704. ............... 7

    B.    No "extraordinary circumstances" justify tolling the limitations period. ......... 8

    C.    The plaintiffs have not alleged "as applied" APA violations. ........................ 11

    D.    The United States has not waived a statute of limitations defense. ................ 13

CONCLUSION .................................................................................................. 15

1
2

**TABLE OF AUTHORITIES**

3
4

CASES

5
6   *Arizona v. Biden*, 31 F.4th 469 (6th Cir. 2022) ...................................................................5

*Arizona v. Biden*, 40 F.4th 375 (6th Cir. 2022) ...................................................................5
7
*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) ...............................................................6
8
*Church of Scientology v. United States*, 920 F.2d 1481, 1486 (9th Cir. 1990 ...................4
9
*CIC Servs., LLC v. IRS*, 141 S. Ct. 1582 (2021) ...............................................................1
10
*Hancock Cty. Land Acquisitions, LLC v. United States*, 2022 WL 3449525 (11th Cir. 2022) ............................................................................................................................3
11
*Harper v. Rettig*, _ F.4th _, 2022 WL 3483824 (1st Cir. Aug. 18, 2022) ........................3
12
*Harper v. Va. Dep't of Taxation*, 509 U.S. 86 (1993) ......................................................10
13
*Hyatt v. U.S. Pat. & Trademark Off.*, 904 F.3d 1361 (Fed. Cir. 2018) ............................15
14
*Hyatt v. United States PTO*, 904 F.3d 1361, 1372 (Fed. Cir. 2018) .................................9
15
*Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1406 (9th Cir. 1995 .......................6
16
*In re Border Infrastructure Env't Litig.*, 915 F.3d 1213, 1225 (9th Cir. 2019) ...............12
*Interior Glass Sys. v. United States*, 927 F.3d 1081 (9th Cir.) .........................................13
17
*Irwin v. Dep't of Veterans Affairs*, 489 U.S. 89 (1990) .....................................................9
18
*JEM Broadcasting Co., Inc. v. FCC*, 22 F.3d 320 (D.C. Cir. 1994) ................................11
19
*L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644 (9th Cir. 2011) .................................6
20
*Linder v. DEA*, No. 18-cv-08030, 2018 WL 6019213, at *3 (D. Ariz. Nov. 16, 2018) ......9
21
*Lo v. Endicott*, 506 U.S. 572, 576 (7th Cir. 2007) ...........................................................10
22
*Mann Constr., Inc. v. IRS*, 539 F. Supp. 3d 745 (E.D. Mich. 2021) .................................6
*Mann Constr., Inc. v. United States*, 27 F.4th 1138 (6th Cir. 2022) .................................1
23
*Marin Alliance for Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142 (N.D. Cal. 2011) .14
24
*Menomee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 257) ..............................10
25
*Miller v. City of Santa Cruz*, 39 F.3d 1030 (9th Cir. 1994) .............................................11
26
*Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) ..................................................9
27
*Mishewal Wappo Tribe of Alexander Valley v. Jewell*, 84 F. Supp. 3d 930, 942 (N.D. Cal. 2015) ............................................................................................................................9
28

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ................................................. 14

*O'Donnell v. Vencor Inc.*, 465 F.3d 1063 (9th Cir. 2006) ................................. 10

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012) ................................................................................................................. 5

*Perez-Guzman v. Lynch*, 835 F.3d 1066 (9th Cir. 2016) .................................... 8

*Quick Korner Mkt. v. U.S. Dep't of Agric.*, 180 F. Supp. 3d 683, 693 (S.D. Cal. 2016) .. 10

*Rattlesnake Coal. v. United States EPA*, 509 F.3d 1095 (9th Cir. 2007) ......... 12

*Russell v. Rolfs*, 893 F.2d 1033 (9th Cir. 1990) ................................................ 14

*SEC v. Boucher*, 2021 WL 321994 (S.D. Cal. Feb. 1, 2021) .............................. 4

*Shaw v. California Dep't of Alcoholic Beverage Control*, 788 F.2d 600 (9th Cir. 1986). 11

*Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 591-92 (9th Cir. 1990) . 10

*Stonecipher v. Bray et al.*, 653 F.2d 398 (9th Cir. 1981) .................................... 4

*Stonecipher v. Bray, et al.*, 653 F.2d 398 (9th Cir. 1981) .................................. 4

*United States ex rel. Ji v. Pac. Chem. Int'l*, 2016 WL 11464744 (C.D. Cal. Sep. 27, 2016) ................................................................................................................. 5

*United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139 (9th Cir. 2011) ........................................................................................................................ 14

*United States v. Washington*, 887 F. Supp. 2d 1077 (D. Mont. 2012) ............. 14

*Washington v. United States Dep't of Homeland Sec.*, No. 4:19-cv-5210, 2020 WL12834440, at *11 (E.D. Wash. Sep. 14, 2020) ........................................... 12

*Weaver v. Alameida*, 225 Fed. App'x 598, 599 (9th Cir. 2007) ........................ 10

*Wind River Min. Corp. v. United States*, 946 F.2d 710 (9th Cir. 1991) ........... 11

*Wong v. Beebe*, 732 F.3d 1030 (9th Cir. 2013) ................................................... 9

STATUTES

26 U.S.C. § 6532 ..................................................................................................... 8

26 U.S.C. § 7421 ..................................................................................................... 1

26 U.S.C. § 7422 ..................................................................................................... 7

5 U.S.C. § 701 ......................................................................................................... 8

5 U.S.C. § 704 ............................................................................................... 7, 12, 15

RULES

Fed. R. Civ. P. 12................................................................................................... 12

**INTRODUCTION**

The plaintiffs believe that federal law and courts' interpretation of that law do not apply to them. To reap the benefits of an abusive tax scheme, they have ignored the statutory requirement to report participation in that scheme; ignored jurisdictional prerequisites for refund claims; and ignored how courts have applied the statute of limitations relevant to Administrative Procedure Act ("APA") claims. In their opposition to the United States' motion, they even ignore their own allegations. Yet they now blame "the government" for their inability to press jurisdictionally or otherwise barred claims due to their own failure to follow the law.

In ignoring the relevant law and facts, the plaintiffs have stated no legitimate basis for this action to proceed. As explained below, in arguing that the Anti-Injunction Act ("AIA") does not bar this action, the plaintiffs disregard key differences between the facts here and those in *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582 (2021). Given these differences, especially that the plaintiffs here seek "rescission" of proposed taxes, the reasoning in *CIC* confirms that the AIA bars this suit. Likewise, in arguing that an exception to the AIA applies based on the decision in *Mann Constr., Inc. v. United States*, 27 F.4th 1138 (6th Cir. 2022), the plaintiffs ignore how the Sixth Circuit actually ruled in that case. They also ignore the availability of an alternative remedy – *i.e.*, a refund suit – which also means the exception does not apply.

In the same vein, in pressing their APA claims, the plaintiffs ignore the facts and law on four fronts. First, they disregard that, because a refund suit would provide them an adequate remedy for their claims, and they have not pled a refund action, the APA does not provide a waiver of sovereign immunity for those claims. Second, they ignore what the Ninth Circuit and other courts have defined as "extraordinary circumstances" that would justify tolling the statute of limitations on any of their APA claims. Third, they ignore their own allegations in arguing that their claims fall within the six-year limitations period for APA claims. And finally, in arguing that the United States has

1

"waived the statute of limitations defense," they ignore facts and law regarding judicial estoppel and the finality of IRS Notice 2007-83.

## ARGUMENT

**I.      Unlike *CIC*, this Action Targets a Tax and Is Thus Barred by the AIA.**

The plaintiffs argue that the decision in *CIC* means the AIA does not bar this action.  To support that position, they attempt to portray the circumstances of their case as identical to those in *CIC.*  In doing so, the plaintiffs ignore stark differences between the two cases.  And in light of those differences, the reasoning in *CIC* confirms that the AIA bars the plaintiffs' claims here:

- The plaintiff in *CIC* challenged an IRS Notice before having to report anything based on the Notice.  It had not violated the reporting requirement and, therefore, did not face tax penalties.  Its suit focused solely on the reporting requirement and associated burden of that requirement.  *See CIC.*, 141 S. Ct. at 1588, 1590.  In contrast, the plaintiffs here challenged IRS Notice 2007-83 *after* violating the reporting requirement and *after* the IRS had proposed tax assessments as a result.  Given that they ignored the reporting requirement, and thus did not experience any associated burdens, the plaintiffs are in no position to complain of any burdens.

- The plaintiff in *CIC* brought no claim against the statutory tax penalties.  *See id.* at 1590.  In contrast, here, the suit is directed squarely against the assessment and collection of the tax penalties.  *See*, *e.g.*, Compl. ¶ 4 (the United States must "further cease the unauthorized collection of penalties imposed on Plaintiffs"); ¶ 11 ("this is a civil action . . . for the recovery of an internal revenue tax that was erroneously assessed and collected"); ¶ 13 ("the IRS should be ordered to cease the unauthorized collection of further penalties imposed"); ¶ 100 (the IRS "continues to act unlawfully by its failure and/or refusal to rescind the penalties assessed against Plaintiffs"); ¶ 101 ("Plaintiffs continue to incur actual damages as a result of the unlawfully assessed penalties"); ¶ 103 ("Plaintiffs are entitled to have the penalties assessed" against them "rescinded").

- According to the Court in *CIC*, if the AIA barred the suit there, the only way for the plaintiff to obtain relief from the reporting requirement would be to violate it, incur the civil penalty for doing so, pay the penalty, and sue for a refund, while, in the process, risk a misdemeanor criminal charge. *See* 141 S. Ct. at 1592. In contrast, here the plaintiffs already have violated the reporting requirement, face proposed civil penalties, and, if there is any risk of criminal sanctions, they already incurred that risk. Unlike the plaintiff in *CIC*, therefore, the plaintiffs here would incur no additional risk in bringing a refund action to assert their claims.

The key point is that, unlike the plaintiff in *CIC*, the plaintiffs here stand at "the cusp of tax liability" and directly challenge a tax obligation. *Id.* at 1591. Under the reasoning in *CIC*, therefore, the AIA bars their claims. To hold otherwise, as the plaintiffs urge, would be to eviscerate the AIA. *CIC* did not do that. Rather, the *CIC* decision clarified that the AIA bars suits that run against a tax, as opposed to those that run against a reporting requirement several steps removed from any tax. *See Hancock Cty. Land Acquisitions, LLC v. United States*, 2022 WL 3449525, at *2 (11th Cir. 2022) (AIA barred APA suit that was, at its heart, "a dispute over taxes").

Likewise, the decision in *Harper v. Rettig*, _ F.4th _, 2022 WL 3483824 (1st Cir. Aug. 18, 2022), does not support, but undermines, the plaintiffs' position. In that case, the IRS had obtained information on the plaintiff taxpayer's virtual currency accounts through summonses for documents issued to third parties. The plaintiff then sued the IRS for, among other things, injunctive relief requiring the IRS to expunge that information from its records. *Id.* at *3. Relying on *CIC*, the First Circuit in *Harper* held that the AIA did not bar the plaintiff's claim for injunctive relief because the claim targeted "the IRS's continued retention of [the plaintiff's] personal financial information," as opposed to a tax. *Id* at *6. In contrast, the plaintiffs here face a specific proposed tax assessment and plainly seek to restrain that assessment and collection on it. For that reason, the AIA bars the plaintiffs' claims.

In addition, because the decision in *CIC* confirms that the AIA bars the plaintiffs' claims, there is no "intervening change in law," as the plaintiffs claim, that would affect the United States' argument on issue preclusion in its opening brief (Dkt. 23, at 19-20).

## II.     *Mann* Does Not Provide a Basis for an Exception to the AIA.

Based primarily on the Sixth Circuit's decision in *Mann*, the plaintiffs argue that the circumstances here satisfy both prongs of the *Williams Packing* exception to the AIA. But regarding the second prong, they ignore the availability of a refund action.  And regarding the first prong, they seek to stretch the *Mann* decision beyond what the Sixth Circuit has found in *Mann* or elsewhere.

### A.     A refund action would provide a remedy and obviate any harm.

The second prong of the *Williams Packing* exception to the AIA is that "equity jurisdiction" otherwise exists, *i.e.*, the taxpayer has no alternative remedy at law and denial of injunctive relief would cause immediate, irreparable harm.  *See Church of Scientology v. United States*, 920 F.2d 1481, 1486 (9th Cir. 1990).  The plaintiffs ignore the remedy issue.  As explained in the opening brief, the plaintiffs have a remedy at law via a refund suit under 26 U.S.C. § 7422.  For that reason, denial of injunctive relief would not result in irreparable harm.  *See Stonecipher v. Bray, et al.*, 653 F.2d 398, 401 (9th Cir. 1981) ("[B]ecause Stonecipher can sue for a tax refund under I.R.C. § 7422, he has failed to satisfy the exception's second prong, requiring a showing of irreparable harm if injunctive relief is denied."); *accord Hancock Cty.*, 2022 WL 3449525, at *3 (second prong of *Williams Packing* exception not satisfied where plaintiffs could present their arguments in Tax Court).

While the plaintiffs argue that they face harm due to the theoretical risk of criminal penalties, that is speculative at best.  Courts in the Ninth Circuit do not grant relief based on the mere possibility of criminal prosecution.  *See*, *e.g.*, *SEC v. Boucher*, 2021 WL 321994, at *3-4 (S.D. Cal. Feb. 1, 2021) (denying request to stay civil proceedings because defendant faced possible criminal charges); *United States ex rel. Ji v. Pac. Chem. Int'l*, No. 14-cv-07203, 2016 WL 11464744, at *2 (C.D. Cal. Sep. 27,

2016) (that government had authority to initiate criminal proceedings and had requested to seal certain documents did not raise existence of criminal investigation above "speculation").  And a plaintiff who faces the theoretical risk of prosecution cannot bring a pre-enforcement challenge without alleging a "genuine threat of imminent prosecution."  *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012).  The plaintiffs here do not allege that the government has communicated any threat of criminal prosecution, let alone taken steps to charge them.  Nor do they allege any history of prosecution in relation to Notice 2007-83.

A refund action would provide the plaintiffs a legal remedy and thus obviate any irreparable harm from denial of the injunctive relief sought.  For this reason alone, the *Williams Packing* exception does not apply.

### B.    *Mann* does not mean the United States could not prevail.

The plaintiffs likewise have failed to show that this case meets the exception's other prong – that under no circumstances could the United States ultimately prevail.  In attempting to do so, the plaintiffs rely solely on the Sixth Circuit's decision in *Mann,* which, they claim, resulted in a nationwide vacatur of Notice 2007-83.  They are wrong.

First, contrary to the plaintiffs' suggestion, the Sixth Circuit has not found that vacatur applies everywhere.  In fact, the Sixth Circuit recently reversed a decision that blocked Homeland Security guidance on immigration enforcement, even though a court in the Fifth Circuit had previously vacated the guidance.  *See Arizona v. Biden*, 40 F.4th 375, 385 (6th Cir. 2022) ("We are not persuaded by the decision of another district court that recently vacated the Guidance.").[1]  And courts within the Sixth Circuit have

---

[1] In concurring in an earlier stay order, Chief Judge Sutton, who authored the *Mann* decision, observed that although the APA says a court may "hold unlawful and set aside" agency actions, the real question "is whether Congress meant to upset the bedrock practice of case-by-case judgments . . . or create a new and far-reaching power through this unremarkable language."  *Arizona v. Biden*, 31 F.4th 469, 484 (6th Cir. 2022) (Sutton, J., concurring).  That the Sixth Circuit went on to reverse the injunction, despite another court's order vacating the guidance, answers that question.

1    questioned nationwide vacatur.  *See*, *e.g.*, *Skyworks, Ltd. v. CDC*, 542 F. Supp. 3d 719,

2    735-36 (N.D. Ohio 2021) (observing "the lack of a firm foundation for nationwide

3    vacatur in the language, structure, and history of the" APA).

4         The plaintiffs correctly observe that the Ninth Circuit has entertained nationwide

5    vacatur, or at least nationwide injunctions barring an agency from enforcing a rule.[2]  But

6    the Sixth Circuit decided *Mann*.  So the Ninth Circuit's position on vacatur has little to do

7    with what the Sixth Circuit did in that case.  And even in the Ninth Circuit, the power to

8    issue an order with nationwide effect does not equate to a requirement to do so.  Courts

9    retain the discretion to tailor relief to the circumstances.  *See*, *e.g.*, *California v. Azar*, 911

10   F.3d 558, 584-85 (9th Cir. 2018) (affirming preliminary injunction against agency rules

11   in five plaintiff states, but reversing as to non-plaintiff states); *L.A. Haven Hospice, Inc.*

12   *v. Sebelius*, 638 F.3d 644, 649 (9th Cir. 2011) (upholding order enjoining agency

13   enforcement of rate cap against plaintiff hospice, but overturning injunction as to other

14   hospices); *see also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1406 (9th Cir.

15   1995) (finding agency violated notice and comment procedures, but leaving endangered

16   species listing requirement in place so agency could remedy errors).

17        In addition, because the *Mann* plaintiffs disavowed any intent to bind the IRS as to

18   other taxpayers, it would be inappropriate to read *Mann* as barring enforcement of Notice

19   2007-83 in the Ninth Circuit.  The *Mann* plaintiffs initially sought injunctive and

20   declaratory relief as well as a refund.  But they dropped their non-monetary claims, and

21   agreed not to seek relief as to any other taxpayers.  *See Mann Constr., Inc. v. IRS*, 539 F.

22   Supp. 3d 745, 755 (E.D. Mich. 2021) (stating that "Plaintiffs had concurred in the

23   dismissal of any claim for injunctive or declaratory relief"); *see also Mann*, No. 1:20-cv-

24

25   [2] That said, whether an agency action should be vacated is a different question from
     whether the vacatur would apply outside the Ninth Circuit.  In *East Bay Sanctuary*
26   *Covenant v. Garland*, 994 F.3d 962, 987 (9th Cir. 2021), for example, the Ninth Circuit
     does discuss courts' power to bind persons outside the Ninth Circuit, especially in the
27   immigration context, but it does not say that courts no longer have the power to issue
     more tailored relief when appropriate.
28

11307 (E.D. Mich.), Dkt. 60, Ex. A (e-mail reflecting plaintiffs' agreement that their complaint "was not intended to seek an injunction against the IRS or a declaratory judgment that would bind the IRS as to other taxpayers.").[3]

The Sixth Circuit's decision in *Mann* thus does not bind courts in the Ninth Circuit.[4]  And the plaintiffs point to nothing else to support their claim that the United States cannot prevail on the merits under any circumstances.  They have thus failed to show that this case meets either *Williams Packing* prong, much less both prongs.  And they have otherwise stated nothing to contradict that the AIA bars this action.

**III.   The APA Provides No Basis for the Plaintiffs' Claims.**

Even if the AIA did not bar the plaintiffs' claims, the plaintiffs have stated nothing to avoid the bars to their APA claims arising from the APA's jurisdictional requirements and the applicable statute of limitations.  As explained below, the plaintiffs do not even address the jurisdictional requirement in 5 U.S.C. § 704.  In addition, contrary to their claims, there are no "extraordinary circumstances" to justify equitably tolling the statute of limitations on their APA claims.  They have not alleged "as applied" challenges to the Notice such that any of their claims fall within the six-year limitations period.  And they disregard the relevant facts and law in arguing that the United States has waived a statute of limitations defense.

**A.   The plaintiffs ignore the APA's jurisdictional requirement in § 704.**

The plaintiffs ignore that the APA permits judicial review only with respect to agency actions "for which there is no other adequate remedy in a court."  5 U.S.C. § 704.

---

[3] After prevailing at the Sixth Circuit, the *Mann* plaintiffs, who are represented by the same counsel as the plaintiffs here, changed course and moved for an order to the effect that the Notice "is set aside everywhere and as to everyone."  *See* No. 1:20-cv-11307 (E.D. Mich.), Dkt. 53, at 6.  That is, they have asked the district court to vacate the Notice nationwide in a motion currently pending.  Yet in this case, the plaintiffs argue the Sixth Circuit has already done that.

[4] Moreover, *Mann* did not address at least two arguments the United States has raised here – that the APA does not waive immunity for the plaintiffs' claims and that the statute of limitations bars their APA claims.

7

As explained in the opening brief, a refund suit under 26 U.S.C. § 7422 would provide the plaintiffs a legal avenue to address their claims.  Given the availability of that remedy, the APA does not waive sovereign immunity for the plaintiffs' claims.[5]

And while a § 7422 refund suit would provide a remedy, the plaintiffs have not pled that they met the jurisdictional requirements for a refund suit with respect to the proposed assessments for 2016 and 2017.  They have met those requirements for Jeanette Govig's refund claim regarding the penalty assessed for 2015.  But as explained in the opening brief, the United States agrees that Jeanette should receive a refund for 2015 on the same basis as the other plaintiffs in the *Govig II* case.  And she did not receive the refund through that case due to her own failure – unlike the other plaintiffs, she did not file an administrative refund claim before bringing suit.  Now that she has done so, the United States will issue her a refund or credit for 2015, providing the relief sought and mooting that claim.[6]  The remaining claims have no jurisdictional basis.

**B.   No "extraordinary circumstances" justify tolling the limitations period.**

Even if the APA provided a jurisdictional basis for the plaintiffs' claims, the six-year statute of limitations would bar those claims.  The plaintiffs challenge Notice 2007-83 only on procedural or policy grounds.  The limitations period on their claims thus began to run when the IRS published the Notice in 2007.  *See Perez-Guzman v. Lynch*, 835 F.3d 1066, 1078-79 (9th Cir. 2016) (procedural APA challenges must be brought within six years of agency action); *Hyatt v. United States PTO*, 904 F.3d 1361, 1372

---

[5] In addition, because the AIA bars the plaintiffs' claims, under 5 U.S.C. § 701(a) as well, the APA does not provide a waiver of immunity here.

[6] The plaintiffs assert that had Jeanette Govig not filed this suit within a few months, "she would have been forever barred from bringing a refund suit."  That is not accurate. Under 26 U.S.C. § 6532(a)(1), where, as here, a taxpayer files an administrative refund claim with the IRS and six months elapse without a response, the taxpayer may bring a refund suit in district court.  Section 6532 does not set an outer limit on the time to bring suit in that circumstance.  Because Ms. Govig filed her administrative claim on March 11, 2021, even under the six-year limitations period in 28 U.S.C. § 2401, she would have several years to bring suit.

(Fed. Cir. 2018) (claim that agency issued rule without notice and comment "accrued at the time the agency made its initial decision to adopt [the challenged rule]").  Because the plaintiffs did not raise these claims within six years of the Notice's issuance, their claims are time-barred.  Acknowledging that they have made procedural APA claims, the plaintiffs attempt to avoid this bar by arguing that *CIC* represents a change in law, and thus an "extraordinary circumstance," that justifies equitably tolling the limitations period.  They thus assert that the limitations period on their APA claims did not begin to run until the Court decided *CIC* in 2021.  They are incorrect.

The "threshold necessary to trigger equitable tolling is very high," and, therefore, equitable tolling is "unavailable in most cases."  *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002).  In this case, because the IRS published the Notice in 2007, the Notice, and the listed transaction it described, had existed and been scrutinized for several years by the time the plaintiffs entered the transaction at issue.  Yet they chose to engage in the transaction anyway and to violate the related reporting requirement.  Their actions do not justify tolling the limitations period so they can then challenge the Notice on procedural grounds well after the time for doing so has expired.

In any event, the plaintiffs cannot establish at least one of the two elements for equitable tolling: (1) they have been "pursuing [their] rights diligently," and (2) "some extraordinary circumstances stood in [their] way."  *Linder v. DEA*, No. 18-cv-08030, 2018 WL 6019213, at *3 (D. Ariz. Nov. 16, 2018) (quoting *Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (en banc)).  Even if the plaintiffs have acted reasonably in pursuing procedural claims against the Notice, they have not identified an "extraordinary circumstance" that would justify tolling the limitations period.  Courts have found qualifying "extraordinary circumstances" in "situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."  *Mishewal Wappo Tribe of Alexander Valley v. Jewell*, 84 F. Supp. 3d 930, 942 (N.D. Cal. 2015) (quoting *O'Donnell v. Vencor Inc.*, 465

9

F.3d 1063, 1068 (9th Cir. 2006)).  The plaintiffs do not claim that either of these situations happened here.  Rather, they assert that "the pre-*CIC* interpretation of the AIA was the extraordinary circumstance preventing Plaintiffs from pursuing their APA claims." Dkt. 27, at 15.  This claim fails for several reasons.

First, the decision in *CIC* did not effect the change in law that the plaintiffs claim it did.  As discussed above and in the opening brief, *CIC* clarified that the AIA bars suits that target a tax.  Because this action targets proposed tax assessments, under the rationale in *CIC*, the AIA would continue to bar the plaintiffs' claims.  Moreover, that the plaintiffs misunderstood the law that *CIC* clarified does not make for an extraordinary circumstance.  "Circumstances attributable to a party's own misunderstanding of the law or tactical mistakes in litigation" do not count as "extraordinary." *Quick Korner Mkt. v. U.S. Dep't of Agric.*, 180 F. Supp. 3d 683, 693 (S.D. Cal. 2016) (citing *Menomee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 257 (2016) (tribe's mistake of law did not constitute extraordinary circumstance sufficient to justify equitable tolling)); *see also Weaver v. Alameida*, 225 Fed. App'x 598, 599 (9th Cir. 2007) (mistake of law alone is not an "extraordinary circumstance").

In the same vein, even if *CIC* changed the law, the change would not serve as a basis to toll the limitations period.  When the Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect . . . as to all events, regardless of whether such events predate or postdate our announcement of that rule." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993).  Litigants who seek equitable tolling based on a change in case law thus face an uphill battle.  *See*, *e.g.*, *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 591-92, 595-96 (9th Cir. 1990); *cf. Lo v. Endicott*, 506 F.3d 572, 576 (7th Cir. 2007) ("We have never held that a change in state substantive law constitutes an 'extraordinary circumstance' that warrants equitable tolling.").

In addition, the circumstances of equitable tolling must have occurred "during the period that Plaintiffs seek to toll, not before the period began or after the period closed."

*Quick Korner Mkt.*, 180 F. Supp. 3d at 693.  Even if *CIC* did change the law, therefore, because that change occurred after the six-year limitations period expired, it cannot support equitable tolling here.

Finally, regardless of the effect of *CIC*, before the Supreme Court decided *CIC*, taxpayers could have brought procedural or policy-based APA claims in a refund suit.  It makes no difference that the plaintiffs themselves did not engage in the transaction described in the Notice within six years of its publication.  An interested party could have challenged the Notice on procedural grounds during the six-year limitations period.  A case on which the plaintiffs rely, *JEM Broadcasting Co., Inc. v. FCC*, 22 F.3d 320 (D.C. Cir. 1994), makes this clear:  "[T]he FCC's failure to conduct notice and comment rulemaking was an immediately obvious fact that . . . was subject to immediate challenge by any number of then-existing would-be license applicants. The mere fact that JEM, in particular, had no opportunity to challenge [the rule] within the statutory period is of no moment."  *Id*. at 326.[7]

The plaintiffs have thus failed to identify an "extraordinary circumstance" that would justify equitably tolling the six-year limitations period that began when the IRS published Notice 2007-83.

### C.    The plaintiffs have not alleged "as applied" APA violations.

The plaintiffs also attempt to circumvent that limitations period by arguing that, in addition to making procedural APA challenges to Notice 2007-83, they also make "as-applied," or substantive, APA challenges.  For as-applied challenges, the limitations period would begin to run when the IRS took action against the plaintiffs based on the Notice.  *See generally Wind River Min. Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991).  But plaintiffs' complaint fails to adequately plead an as-applied challenge.

---

[7] The plaintiffs also argue that the Court should reject what actually are the Ninth Circuit's statements emphasizing the need for repose, citing two other Ninth Circuit cases – *Miller v. City of Santa Cruz*, 39 F.3d 1030 (9th Cir. 1994), and *Shaw v. California Dep't of Alcoholic Beverage Control*, 788 F.2d 600 (9th Cir. 1986).  But neither case even mentions statutes of limitations or "repose."  Rather, they both focus on res judicata.

11

1    As an initial matter, an as-applied challenge to the Notice was not ripe when the

2    plaintiffs filed their complaint.  The complaint asserts only that the IRS *proposed*

3    assessments for 2016 and 2017 based on the plaintiffs' failure to comply with the

4    reporting requirement arising from the Notice.  The IRS had thus not taken final action

5    against the plaintiffs.  For that reason, under the APA, the plaintiffs could not make an

6    as-applied challenge to the proposed action related to the Notice.  *See* 5 U.S.C. § 704

7    (only "final agency action" is reviewable); *see also Rattlesnake Coal. v. United States*

8    *EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007).[8]

9    This ripeness issue underscores the merits problem – in reality, the plaintiffs'

10    dispute lies with the Notice itself, and the IRS's promulgation of it, not its application to

11    them.  Their brief attempts to cure this problem by asserting that the Notice was "ultra

12    vires," *i.e.*, "exceeding constitutional or statutory authority."  Dkt. 27, at 17.  But it is not

13    clear whether they mean the IRS acted ultra vires because it allegedly violated the APA's

14    procedural requirements, or whether it acted contrary to other law.  That lack of clarity

15    itself constitutes a failure to properly allege a claim under Fed. R. Civ. P. 12(b)(6).  But

16    in any event, the plaintiffs have not pled an actual as-applied APA claim.

17    If the IRS's alleged "ultra vires" action was issuing the Notice without notice and

18    comment, or some other error in the Notice's promulgation, then the plaintiffs state a

19    procedural APA challenge that is time-barred.  If, on the other hand, the plaintiffs believe

20    the IRS exceeded its authority in some other way, they have not alleged what that is.  *See*

21    *In re Border Infrastructure Env't Litig.*, 915 F.3d 1213, 1225 (9th Cir. 2019) (plaintiffs'

22    ultra vires claims failed because agency acted within legal authority); *Washington v.*

23    *United States Dep't of Homeland Sec.*, No. 4:19-cv-5210, 2020 WL12834440, at *11

24    (E.D. Wash. Sep. 14, 2020) (observing that "the ultra vires claim is not plausible unless

25    the States can direct the court to exactly what authority DHS exceeds by including the

26    public benefits condition in the Public Charge Rule").

27

28    [8] The United States anticipates that the IRS will make final assessments in the near
future.

The plaintiffs do not do so here.  As discussed in the opening brief (Dkt. 23 at 3-5), and as the Ninth Circuit has stressed, the IRS is charged with assessing and collecting the proper amount of tax, which includes assessing congressionally mandated penalties on those who refuse to provide information crucial to combatting tax evasion.  *See Interior Glass Sys. v. United States*, 927 F.3d 1081, 1086-87 (9th Cir.), *cert. denied*, 140 S. Ct. 606 (2019).  The plaintiffs, however, do not take issue with the statutory framework or identify any provision of substantive law the IRS supposedly is violating. The only "defects" they point to concern the Notice's promulgation, for which the statute of limitations has expired.

The plaintiffs' claim that "the Notice should be set aside as an arbitrary and capricious agency action" suffers from the same deficiency.  If the Notice itself is the purported arbitrary agency action, then the plaintiffs state a procedural or policy challenge that is time-barred.  If the plaintiffs mean that the Notice was applied against them in a manner that was arbitrary and capricious, they have not alleged how.  And they have not plausibly alleged that it was arbitrary and capricious for the IRS to identify a questionable transaction and impose a reporting requirement, given the IRS's statutory authority to do so, as discussed in the opening brief (Dkt. 23, at 3-5) and above.  *See generally Interior Glass*, 927 F.3d at 1087-88.

Despite using the terms "ultra vires" and "arbitrary and capricious," therefore, the plaintiffs fail to allege specific as-applied APA claims.  Thus, they cannot establish that the statute of limitations for any of their APA claims began to run later than 2007.

**D.     The United States has not waived a statute of limitations defense.**

Finally, in what appears to be a last-resort attempt to overcome the statute of limitations, the plaintiffs assert that the United States has waived any statute of limitations defense.  The plaintiffs' argument appears to be, first, that the United States did not raise the statute of limitations in *Mann* and so cannot do so here and, second, that the IRS has somehow taken the position that the Notice is not a final agency action, so

the United States is estopped from arguing that the limitations period has run.  The

plaintiffs are wrong on both counts.

The Ninth Circuit has recognized the doctrine of judicial estoppel, which may

prevent a party from changing its position over the course of judicial proceedings if the

change has an adverse impact on the judicial process.  *See Russell v. Rolfs*, 893 F.2d

1033, 1037 (9th Cir. 1990).  However, it is questionable whether the doctrine applies to

the United States given the inherent policy questions presented.  *See New Hampshire v.*

*Maine*, 532 U.S. 742, 755 (2001) ("[B]road interests of public policy may make it

important to allow a change of positions that might seem inappropriate as a matter of

merely private interests.").  This is particularly the case where estoppel "would

compromise a governmental interest in enforcing the law."  *Id.* at 755; *see also Marin*

*Alliance for Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1153 (N.D. Cal. 2011).

But assuming the doctrine could apply against the United States here, the plaintiffs

have failed to establish the relevant factors to justify its application.  Those factors center

on whether (1) a party's later position is clearly inconsistent with its original position; (2)

the party has persuaded the court of the earlier position; and (3) allowing the new,

inconsistent position would provide an unfair advantage, or impose an unfair hardship on

the opposing party.  *See United States v. Liquidators of European Fed. Credit Bank*, 630

F.3d 1139, 1148 (9th Cir. 2011).  Here, the United States has not changed its position.

To the extent a case involving different taxpayers is even relevant, the United States did

not take an affirmative position on the statute of limitations in *Mann*, and thus did not

persuade the court one way or the other.  Moreover, a statute of limitations defense is not

inherently inconsistent with the merits defenses raised in *Mann*.  And because the United

States has not changed its position, asserting the statute of limitations does not give it an

unfair advantage.

Regarding the plaintiffs' claim that the IRS has taken the position that the Notice

is not final, they do not point to any written guidance or statements that suggest the

Notice is "temporary" or "interlocutory."  Their theory appears to be that (1) the Notice

14

may apply to some but not all types of welfare benefit plan transactions, so the Notice itself can never be "final" until the IRS determines whether it applies in any given case, and (2) the IRS once revoked a different Notice, which means it might someday revoke the Notice here, so the Notice can never be final.  Neither of these theories makes sense.

If it were true that an agency rule or directive is not final because it might apply to some loosely similar transactions but not others, no agency pronouncement would ever be final, and there would be no such thing as a facial challenge to agency action. Moreover, even a formal amendment to an agency rule does not necessarily restart the statute of limitations.  *See Hyatt*, 904 F.3d at 1372.  Similarly, if the power to revoke or change a notice meant a notice could not be final, no action could be final.

These arguments appear to be nothing more than an attempt to preview their merits defenses to the penalties at issue.  *See* Dkt. 27, at 20-21.  But the plaintiffs' defenses against the penalties have nothing to do with whether the Notice is final such that the statute of limitations did not begin to run when the IRS published it.  And in any event, if the Notice were not final, the plaintiffs could not challenge it under the APA. *See* 5 U.S.C. § 704.

## CONCLUSION

For these reasons and those stated in the United States' opening brief, the United States respectfully requests that the Court dismiss the plaintiffs' claims.

Dated:  September 14, 2022                    Respectfully submitted:


DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Charles J. Butler*
CHARLES J. BUTLER
Assistant Chief, CTS-Western
E. CARMEN RAMIREZ
Trial Attorney
Tax Division, U.S. Department of Justice

*Counsel for the United States of America*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2022, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to counsel for all parties that have appeared in this action.

*/s/ Charles J. Butler*
CHARLES J. BUTLER
Assistant Chief, CTS-Western
Tax Division, U.S. Department of Justice