WO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Govig & Associates, Inc., an Arizona corporation; Todd A. Govig; and Richard A. Govig and Jeanette H. Govig, spouses,

Plaintiffs,

v.

United States of America; Internal Revenue Service; and Department of the Treasury,

Defendants.

No. CV-22-00579-PHX-DGC

**ORDER**

The Internal Revenue Service ("IRS") has determined that Plaintiff Govig & Associates and its owners failed to disclose their participation in a "listed transaction" described in IRS Notice 2007-83. The IRS assessed tax penalties against Plaintiffs for 2015 and proposed additional penalties for 2015-2017. Plaintiffs argue that Notice 2007-83 was issued in violation of the Administrative Procedure Act ("APA") and seek an order setting it aside, requiring the refund of a penalty paid for 2015, and declaring that the penalties proposed for 2015-2017 must be rescinded. Doc. 1.

The United States moves to dismiss for lack of subject matter jurisdiction and failure to state a claim. Doc. 23; *see* Fed. Rs. Civ. P. 12(b)(1), (6). It argues that the Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421(a), and the "tax exception" to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), deprive the Court of jurisdiction because this suit seeks to restrain the assessment of a tax. Doc. 23 at 6-8,

1

15-24.[1]  The United States further argues that Plaintiffs cannot rely on the APA's waiver of sovereign immunity and that the APA claims are barred by issue preclusion and the statute of limitations.  *Id.* at 8, 24-30.  The Court held oral argument on March 2, 2023. *See* Doc. 43.  The Court will grant the motion in part and deny it in part.

## I.   Background.

### A.   Regulatory Landscape.

Federal tax collection is based on a "system of self-reporting."  *United States v. Bisceglia*, 420 U.S. 141, 145 (1975).  There is legal compulsion to be sure, but the government largely "depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability."  *Id.*  It would be naive, however, "to ignore the reality that some persons attempt to outwit the system, and tax evaders are not readily identifiable."  *Id.*

Congress has authorized the IRS to establish procedures for collecting information from taxpayers.  A federal statute requires taxpayers to provide information in a return or statement when IRS regulations require it.  26 U.S.C. § 6011(a).

IRS regulations say taxpayers must disclose their participation in certain "listed transactions" the agency has selected for scrutiny.  26 C.F.R. § 1.6011-4; *see Interior Glass Sys., Inc. v. United States*, 927 F.3d 1081, 1082 (9th Cir. 2019).  "Listed transaction" is defined as "a transaction that is the same as or substantially similar to one of the types of transactions that the [IRS] has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance as a listed transaction."  26 C.F.R. § 1.6011-4(b)(2); *see also* 26 U.S.C. § 6707A(c)(2).

To incentivize disclosure, Congress has authorized the IRS to impose monetary penalties on those who fail to file a required statement.  26 U.S.C. § 6707A(a); *see Interior Glass*, 927 F.3d at 1082-83. The penalty for failing to disclose a listed transaction generally is 75 percent of the decrease in tax shown on the return as a result

---

[1] Citations are to page numbers attached to the top of pages by the Court's electronic filing system.

of such transaction.  26 U.S.C. § 6707A(a)-(b); *see Laidlaw's Harley Davidson Sales, Inc. v. Comm'r of Internal Revenue*, 29 F.4th 1066, 1068 (9th Cir. 2022).  A penalty assessed under § 6707A is deemed a "tax" for purposes of the Internal Revenue Code, including the AIA.  26 U.S.C. § 6671(a); *see Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012).

Taxpayers who believe penalties have been assessed in error are often barred from challenging the assessments in federal court because the AIA prohibits most suits to restrain the assessment of taxes.  26 U.S.C. § 7421(a).  Such taxpayers are not without a legal remedy, however, because Congress has authorized refund suits. *See* 26 U.S.C. § 7422(a); 28 U.S.C. § 1346(a)(1).  The taxpayer must first pay the penalty and exhaust administrative remedies by filing a refund claim with the IRS.  *See* § 7422(a); *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1091 (9th Cir. 2007).  Then, if the claim is denied or not approved within six months, the taxpayer may bring a refund suit under § 1346(a)(1).   That section confers subject matter jurisdiction and "waives the government's sovereign immunity by authorizing federal district courts to hear 'any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority[.]'" *Dunn & Black*, 492 F.3d at 1088 (cleaned up).

## B.   IRS Notice 2007-83.

One of the ways the IRS identifies listed transactions is by issuing published notices.  *See* 26 C.F.R. § 1.6011-4(b)(2).  In November 2007, the IRS issued Notice 2007-83, titled "Abusive Trust Arrangements Utilizing Cash Value Life Insurance Policies Purportedly to Provide Welfare Benefits."  2007-45 I.R.B. 960, 2007-2 C.B. 960, 2007 WL 3015114 (Nov. 5, 2007).  Certain trust arrangements using cash value life insurance policies – which combine life insurance coverage with an investment account – were being promoted to small businesses "as a way to provide cash and other property to the owners of the business on a tax-favored basis."  2007 WL 3015114, at *1.  The trustees in such arrangements used the employer's contributions to purchase cash value

life insurance policies on the lives of the business owners or other key employees. When the trust was terminated after several years, the cash value life insurance policies, cash, or other property held by the trust would be distributed to these individuals. *Id.*; *see Interior Glass*, 927 F.3d at 1083-84. Notice 2007-83 informs taxpayers and their advisors that the tax benefits generated by such trust arrangements are not allowed under federal tax laws and the arrangements are "listed transactions" for purposes of 26 C.F.R. § 1.6011-4(b)(2). 2007 WL 3015114, at *1. As a result, participants must disclose the transactions to the IRS by filing a Form 8886 disclosure statement. 26 C.F.R. § 1.6011-4(d). Failure to file the form can result in civil tax penalties under 26 U.S.C. § 6707A and criminal penalties under 26 U.S.C. § 7203 of a misdemeanor, with up to a year in prison and fines.

## C.   Facts and Procedural History.

Govig & Associates (the "company") is an executive recruiting agency owned by Plaintiffs Todd Govig and Richard and Jeanette Govig. The Govigs are participants in a Death Benefit and Restricted Property Trust implemented by the company in 2015 (the "Govig trust"). The IRS determined that the Govig trust was a listed transaction under Notice 2007-83 and that Plaintiffs failed to disclose their participation. In August 2019, the IRS assessed § 6707A penalties against Plaintiffs for 2015.

Plaintiffs paid the 2015 penalties and filed suit to have Notice 2007-83 set aside under the APA. *See* Doc. 1, *Govig & Assocs., Inc. v. United States*, No. CV-19-05185-PHX-SMB ("*Govig I*"). The district judge dismissed the suit for lack of subject matter jurisdiction, finding that the AIA barred it from "hearing the case as doing so would inhibit the assessment or collection of a tax assessed under 26 U.S.C. § 6707A." Doc. 32 at 1-2; *see also Govig I*, 2020 WL 6048301 (D. Ariz. Oct. 13, 2020).

On October 15, 2020, the IRS proposed the assessment of § 6707A penalties against Plaintiffs for the years 2015-2017. Plaintiffs filed suit again in November 2020, seeking refund of the § 6707A penalties paid for 2015 under §§ 7422(a) and 1346(a)(1). *See* Doc. 1, *Govig & Assocs., Inc. v. United States*, No. CV-20-02278-PHX-DLR ("*Govig II*"). The United States agreed that the company, Todd, and Richard were entitled to

4

refunds because they had not participated in a listed transaction in 2015 and had filed administrative refund claims before filing suit.  *See* Doc. 19.  Jeanette was not entitled to a refund because she had filed no administrative claim.  *See id.*  The district judge in the second lawsuit entered a stipulated judgment in May 2021.  *See* Doc. 20.

In March 2022, the United States Court of Appeals for the Sixth Circuit found Notice 2007-83 unlawful because the IRS "did not satisfy the notice-and-comment procedures for promulgating legislative rules under the APA."  *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1148 (6th Cir. 2022).  Plaintiffs then filed this third lawsuit in April 2022.

Plaintiffs characterize this as an action "to set aside final agency action, namely Notice 2007-83, in accordance with the [APA], and to obtain a refund pursuant 26 U.S.C. § 7422."  Doc. 1 ¶ 10.  They argue that the Court has subject matter under the APA's provision that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review."  5 U.S.C. § 702; Doc. 1 ¶¶ 11, 48.  Plaintiffs also argue that the Court has subject matter jurisdiction under 28 U.S.C. § 1346(a)(1) "because this is a civil action against the United States for the recovery of an internal revenue tax that was erroneously assessed and collected[.]"  *Id.* ¶ 11.

The complaint asserts five claims: (1) failure to follow notice-and-comment procedures for Notice 2007-83 in violation of the APA; (2) unauthorized agency action in violation of the APA; (3) arbitrary and capricious agency action in violation of the APA; (4) refund of the § 6707A penalty Jeanette paid for 2015; and (5) declaratory judgment and rescission for the additional penalties proposed against Plaintiffs for 2015-2017.  *Id.* ¶¶ 47-103.  The United States moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6).  Doc. 23.

## II.  The Effect of the *Mann* Decisions.

Plaintiffs claim that Notice 2007-83 was set aside nationwide by the Sixth Circuit's *Mann* decision.  They argue that the "vacatur nullified the Notice" – that it "was

unwound as if it never existed."  Doc. 42 at 5.  As a result, Plaintiffs claim, they can prevail on the merits of this case with no need to prove the Notice unlawful.  Although this argument does not bear directly on the question to be decided here – whether Plaintiffs' claims fail for lack of jurisdiction, issue preclusion, or tardiness – it arises repeatedly in Plaintiffs' arguments and therefore will be addressed at the outset.

The Sixth Circuit did say that "[b]ecause the IRS's process for issuing Notice 2007-83 did not satisfy the notice-and-comment procedures for promulgating legislative rules under the APA, we must set it aside."  *Mann*, 27 F.4th at 1148.  But the court said nothing about the scope of its ruling – whether it was setting aside the Notice for purposes of the case before it or for all purposes, everywhere.

Approximately one month after *Mann* was issued, the opinion's author, Chief Judge Jeffrey Sutton, said this in another Sixth Circuit case:

> I am not the first to question nationwide (or universal) injunctions (or remedies) that bar the federal government from enforcing a law or regulation anywhere and against anyone. . . . Such injunctions create practical problems[.]  The effect of them is to prevent the National Government from enforcing a rule or executive order without (potentially) having to prevail in all 94 district courts and all 12 regional courts of appeals.  They incentivize forum shopping.  They short-circuit the decisionmaking benefits of having different courts weigh in on vexing questions of law and allowing the best ideas to percolate to the top. . . .
>
> The Administrative Procedure Act, it is true, says that a reviewing court may "hold unlawful and set aside" agency actions that violate the law.  5 U.S.C. § 706(2).  But that raises a question; it does not answer it.  The question is whether Congress meant to upset the bedrock practice of case-by-case judgments with respect to the parties in each case or create a new and far-reaching power through this unremarkable language. . . . Use of the "setting aside" language does not seem to tell us one way or another whether to nullify illegal administrative action or not to enforce it in the case with the named litigants.  For that reason, I would be inclined to stand by the long-understood view of equity – that courts issue judgments that bind the parties in each case over whom they have personal jurisdiction.

*Arizona v. Biden*, 31 F.4th 469, 483-84 (6th Cir. 2022) (Sutton, C.J., concurring; citations omitted).  If Chief Judge Sutton harbors such doubts about whether a judicial set-aside under the APA affects only the parties before the court or has broader effect, this Court certainly cannot conclude that he intended *Mann* to vacate the Notice nationwide without even addressing the issue.[2]

The Michigan district court judge in *Mann* had the same view.  When the case returned to him on remand, the judge thought *he* needed to decide whether the Notice should be set aside nationwide.  *See Mann Constr., Inc. v. United States*, No. 1:20-CV-11307, 2023 WL 248814, at *1-3 (E.D. Mich. Jan. 18, 2023).  The judge correctly noted that this issue was "not expressly addressed by the Sixth Circuit[.]"  *Id.* at *2.

The district judge found that the Notice should be vacated nationwide.  *Id.* at *3.  The Court does not agree with Plaintiff's contention, however, that his order fully extinguishes the Notice everywhere else.  It appears that no party before the Michigan district court sought to have the notice set aside.  The plaintiffs in that case specifically agreed that their complaint "was not intended to seek an injunction against the IRS or a declaratory judgment that would bind the IRS as to other taxpayers."  Doc. 30 at 10-11 (quoting Doc. 60 at 1, *Mann Constr., Inc. v. United States*, No. 2:20-cv-11032 (E.D. Mich. 2021)); *see also Mann Constr., Inc. v. United States*, 539 F. Supp. 3d 745, 755 (E.D. Mich. 2021) (explaining that the plaintiffs "concurred in the dismissal of any claim for injunctive or declaratory relief, so the only claim for relief remaining was for a judgment awarding damages in the amount of the 6707A penalty assessed for [tax year] 2013").  This point was made to the district judge on remand, but he concluded that the Notice should be vacated even if no party sought that relief:

> The APA requires reviewing courts to "set aside" or to vacate any unlawful regulation.  5 U.S.C. § 706(2).  This vacatur requirement exists regardless of whether Plaintiffs seek it.  Thus, even if Plaintiffs "forfeited" their claim

---

[2] Plaintiffs argue that the Ninth Circuit has recognized the power of federal courts to vacate agency regulations nationwide.  Doc. 42 at 6-7.  But the question here is not what the Ninth Circuit has authorized, but what the Sixth Circuit did in *Mann*.

for declaratory relief, this Court may not ignore the edict of Congress: that is, that courts "shall" set aside any rule passed without notice and comment that Congress did not expressly exclude from the notice-and-comment requirements.  5 U.S.C. § 706(2).

*Id.* at 3 (citation and emphasis omitted).

A decision not requested by the parties and not required to accord full relief between them is dictum.  *See Lions Club of Albany, California v. City of Albany*, No. C 17-05236 WHA, 2022 WL 17072021, at *2 (N.D. Cal. Nov. 17, 2022) (explaining that the court's discussion in a prior case was "dictum [that] could not be deemed to be an order . . . because there was no one in the prior case asking for such relief"); *In re Motors Liquidation Co.*, 619 B.R. 63, 72 (Bankr. S.D.N.Y. 2020) ("[B]ecause plaintiffs had not sought relief from the GUC Trust, any so-called 'finding' with respect to claims against the GUC Trust was entirely 'unnecessary to the disposition of the case' and was therefore dictum.").  And dictum is not binding on other courts.  *See Hachicho v. McAleenan*, No. EDCV 19-820-VAP (KK), 2019 WL 5483414, at *7 (C.D. Cal. Oct. 18, 2019) (noting that "statements not necessary to a decision are dicta and have no binding or precedential impact") (citing *Exp. Grp. v. Reef Indus., Inc.*, 54 F.3d 1466, 1472 (9th Cir. 1995)); *see also Advsr, LLC v. Magisto Ltd.*, No. 19-CV-02670-JCS, 2020 WL 978610, at *8 (N.D. Cal. Feb. 28, 2020) ("Excepting narrow doctrines of estoppel and law of the case, no district court decision binds any court (or even the issuing court) in future cases[.]").

This Court finds that the circuit and district court decisions in *Mann* cannot fairly be read as having nationwide scope.  As a result, the Court will not treat Notice 2007-83 as a legal nullity.

## III. Rule 12(b)(1) and (6) Standards.

Federal courts have limited jurisdiction, "possess[ing] only that power authorized by Constitution and statute[.]"  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  When jurisdiction is challenged in a Rule 12(b)(1) motion, it is "presumed that [the claim] lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]"  *Id.* (citations omitted).  To show

jurisdiction over a claim against the United States and its agencies, the plaintiff must allege both "statutory authority granting subject matter jurisdiction over the claim" and "a waiver of sovereign immunity." *E.J. Friedman Co. v. United States*, 6 F.3d 1355, 1357 (9th Cir. 1993) (citation omitted).  A court must accept the complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Rule 12(b)(6) allows a defendant to challenge the factual and legal sufficiency of a claim before discovery.  A complaint that pleads a cognizable legal theory will survive Rule 12(b)(6) review if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The complaint's factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 556.

## IV.     The United States' Motion to Dismiss.

### A.     The AIA and the DJA's Tax Exception.

The AIA and the DJA's tax exception are congressionally imposed limitations on the Court's jurisdiction. *See Govig I*, 2020 WL 6048301, at *3.  With certain exceptions not relevant here, the AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person[.]"  26 U.S.C. § 7421(a).   Under the DJA, federal courts may issue declaratory judgments "except with respect to Federal taxes[.]"  28 U.S.C. § 2201(a).  Together, these provisions "deprive the Court of subject matter jurisdiction to hear injunctive or declaratory claims regarding taxes."  *Ridley v. United States*, No. 3:20-CV-11439, 2022 WL 351072, at *7 (E.D. Mich. Jan. 12, 2022); *see George v. United States*, No. 5:21-CV-01187-EJD, 2022 WL 562758, at *2 (N.D. Cal. Feb. 24, 2022) ("The DJA is coextensive with the AIA – if a suit is not allowed under the AIA, it is barred by the DJA.") (citing *Perlowin v. Sassi*, 711 F.2d 910, 911 (9th Cir. 1983)); *Freedom Path, Inc. v. Lerner*, No. 3:14-CV-1537-D, 2016 WL 3015392, at *6 (N.D. Tex. May 25, 2016) (same).

Except for Jeanette's refund claim in count four, the United States contends that the Court lacks jurisdiction over Plaintiffs' claims because they seek to restrain the IRS from assessing and collecting taxes and such relief is barred by the AIA and DJA. Doc. 23 at 6-7, 14-19.  The government further argues that the Supreme Court's recent decision regarding the AIA's scope, *CIC Services, LLC v. IRS*, 141 S. Ct. 1582 (2021), confirms that the AIA bars suits like this one.  *Id.*  Plaintiffs respond that this suit challenges the reporting requirement imposed by Notice 2007-83 and the Supreme Court's holding in *CIC Services* makes clear that the AIA does not prohibit APA challenges to an information-reporting requirement.  Doc. 27 at 2-3, 10-13.

#### 1.   *CIC Services*.

In *CIC Services*, an advisor to taxpayers who were participating in insurance agreements known as "micro-captive transactions" sued the IRS to enjoin enforcement of IRS Notice 2016-66, which required advisors to report information about micro-captive transactions and subjected them to § 6707A penalties and potential criminal liability for noncompliance.  The advisor claimed the notice violated the APA.  The district court found that the advisor actually sought to restrain the IRS's assessment and collection of a tax and dismissed for the case for lack of jurisdiction under the AIA.  *CIC Servs., LLC v. IRS*, No. 3:17-CV-110, 2017 WL 5015510, at *4 (E.D. Tenn. Nov. 2, 2017).  The Sixth Circuit affirmed, holding that the suit sought to "restrain (and indeed eliminate)" the tax penalty by "invalidat[ing] the Notice, which is [the tax's] entire basis."  *CIC Services, LLC v. IRS*, 925 F.3d 247, 255 (6th Cir. 2019).

The Supreme Court reversed.  It held that the AIA does not prohibit "a suit seeking to set aside an information-reporting requirement that is backed by both civil tax penalties and criminal penalties."  *CIC Servs.*, 141 S. Ct. at 1586.  The key issue was whether the suit was brought for the purpose of restraining the assessment or collection of a tax in violation of the AIA.  *Id.* at 1588.  The Court explained that if the "downstream" tax penalty in § 6707A did not exist, the "case would be a cinch: The [AIA] would not apply and the suit could proceed [because a] reporting requirement is not a tax[] and a

suit brought to set aside such a rule is not one to enjoin a tax's assessment or collection." *Id.* at 1588-89 (citing *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 9-10 (2015)).

The complication arose from the fact that Notice 2016-66's reporting obligations "are backed up by a statutory tax penalty." *Id.* at 1589. The question, then, was whether that added tax penalty "mean[s] that CIC's suit is, as the [AIA] provides, 'for the purpose of restraining the assessment or collection of any tax[.]'" *Id.* The Supreme Court provided guidance for determining a suit's purpose in this context:

> [W]e inquire not into a taxpayer's subjective motive, but into the action's objective aim – essentially, the relief the suit requests. . . . The purpose of a measure is "the end or aim to which [it] is directed." And in this context, that aim is not best assessed by probing an individual taxpayer's innermost reasons for suing. Down that path lies too much potential for circumventing the [AIA]. Instead, this Court has looked to the face of the taxpayer's complaint . . . [and] "the substance of the suit" – the claims brought and injuries alleged – to determine the suit's object. And most especially, we have looked to the "relief requested" – the thing sought to be enjoined.

*Id.* at 1589-90 (citations omitted).

The advisor's complaint in *CIC Services* was brought before the IRS report was due and before any penalty had been assessed. It claimed that the IRS violated the APA by issuing Notice 2016-66 without notice-and-comment procedures and that the notice was arbitrary and capricious because it imposed new reporting requirements without proven need. *See id.* at 1588, 1590 (citations omitted). The relief requested was "setting aside IRS Notice 2016-66," "enjoining the enforcement of Notice 2016-66 as an unlawful IRS rule," and "declaring that Notice 2016-66 is unlawful." *Id.* (citations and brackets omitted). The advisor argued that this request revealed the suit's true aim: invalidating the notice and thereby eliminating its reporting requirements. *See id.* at 1590. The government countered that the ultimate purpose was to stop collection of the tax itself. *Id.* It argued that avoiding the burdens of complying with the notice and avoiding the tax penalties for noncompliance are "two sides of the same coin." *Id.*

The Supreme Court found that the "complaint, and particularly its request for relief, sets out [the] suit's purpose as enjoining the Notice" and "not to block the application of a penalty that might be imposed for some yet-to-happen violation." *Id.* (citing 5 U.S.C. § 706). The Court held that the suit fell "outside the [AIA] because the injunction" that it sought did not "run against a tax at all." *Id.* at 1593. Instead, the "tax functions, alongside criminal penalties, only as a sanction for noncompliance with the [Notice's] reporting obligation." *Id.* at 1594.

The Court rejected the government's argument that "an injunction against the Notice is the same as one against the tax penalty – just 'two sides of the same coin.'" *Id.* at 1590. Three aspects of the regulatory scheme led to this rejection.

First, the Notice "levies no tax" and instead "imposes affirmative reporting obligations, inflicting costs separate and apart from the statutory tax penalty." *Id.* By challenging the legality of the Notice, the advisor sought "to get out from under the (non-tax) burdens of a (non-tax) reporting obligation." *Id.* at 1591. Although CIC would never have to worry about the downstream tax penalty if its suit succeeded, that was "the suit's after-effect, not its substance. The suit still target[ed] the reporting mandates . . . of the Notice itself." *Id.*

Second, the Notice's reporting rule and the statutory tax penalty were several steps removed from each other. *Id.* As already noted, no tax penalty had been assessed.

Third, violation of the Notice was punishable not only by a civil tax but also by criminal penalties. *Id.* at 1591-92 (citing 26 U.S.C. § 7203). "That fact clinches the case for treating a suit brought to set aside the Notice as different from one brought to restrain its back-up tax." *Id.* at 1592.

## 2. Plaintiffs' Suit.

In ruling on the government's motion, the Court must conduct its "jurisdictional analysis on a claim-by-claim basis[.]" *Martinez v. Clark*, 36 F.4th 1219, 1226 (9th Cir. 2022); *see U.S. ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1176 (10th Cir. 2007) ("each claim in a multi-claim complaint must be treated as if it stood alone");

1  *Winnemem Wintu Tribe v. U.S. Dep't of Interior*, 725 F. Supp. 2d 1119, 1136 (E.D. Cal.
2  2010) ("the court analyzes plaintiffs' APA allegations on a claim-by-claim basis.").  The
3  Court will review each of the complaint's five claims separately.

4  **a.      Count One – APA Notice and Comment Claim.**

5  Count one alleges that the IRS violated the notice-and-comment requirements of
6  the APA when it issued Notice 2007-83.  Doc. 1 ¶¶ 47-61.  It alleges that under the APA,
7  "'rules' promulgated by an agency must be published in accordance with notice-and-
8  comment procedures."  *Id.* ¶ 47 (citing 5 U.S.C. § 553).  "An agency's failure to comply
9  with the mandated notice-and-comment procedures is grounds for invalidating the rule."
10  *Id.*   The APA permits a court to set aside agency action taken "without observance of
11  procedure required by law[.]"  5 U.S.C. § 706(2)(D).  Count one says nothing about the
12  penalties assessed against Plaintiffs or recission of those penalties.

13  Count one falls within the Supreme Court's holding in *CIC Services* – it meets
14  each of the three factors identified by the Court as distinguishing *CIC Services* from cases
15  seeking to restrain the assessment and collection of a tax within the meaning of the AIA.
16  First, count one challenges an IRS Notice that imposes "affirmative reporting
17  obligations" and inflicts "costs separate and apart from the statutory tax penalty."  *CIC*
18  *Services*, 141 S. Ct. at 1591.  Second "the Notice's reporting rule and the statutory tax
19  penalty are several steps removed from each other."  *Id.*  As in *CIC Services*, no penalty
20  had been assessed in this case against the company, Todd, or Richard when this lawsuit
21  was filed.[3]  "Third, violation of the Notice is punishable not only by a tax but by separate
22  criminal penalties."  *CIC Services*, 141 S. Ct. at 1592.

---

25  [3] The government stated during oral argument that penalties for years 2016 and
26  2017 were assessed against Plaintiffs in September 2022, and it has now submitted tax
transcripts purportedly reflecting those assessments.  Doc. 44.  But count one clearly was
27  brought before any penalties were owed.  Although this was closer in time than the
possible penalties in *CIC Services*, it remains true that the APA claim in count one was
28  not brought in response to an existing tax obligation, distinguishing it from many tax-
rescission claims that are barred by the AIA.

The government focuses on the fact that the complaint's prayer for relief includes a request not only to set aside the Notice, but also to rescind any penalties that might be assessed against Plaintiffs for the years 2015-2017.  *See* Doc. 1 at 15.  This is correct, but the only count in the complaint that mentions tax penalties or their rescission is count five.  *Id.* ¶¶ 100, 103.  Count one mentions neither – it  focuses solely on the invalidity of Notice 2007-83 for failure to comply with APA procedures.  The Court accordingly construes the complaint and count one (as well as counts two and three discussed below) as seeking set-aside of the Notice, not rescission of threatened penalties.  So construed, count one falls squarely within the holding of *CIC Services*.

The United States asserted at oral argument that this conclusion will eviscerate the AIA by permitting a flood of tax-related cases.  Not so.  Actions permitted by *CIC Services* are limited to (1) lawsuits challenging an information-gathering notice that imposes affirmative reporting obligation and inflicts costs separate and apart from the statutory tax penalty, (2) when the notice and the statutory tax penalty are several steps removed from each other, and (3) when violation of the notice is punishable not only by a tax but by separate criminal penalties.  141 S. Ct. at 1591-92.  This appears to be a fairly narrow group of cases.

Quoting language from *CIC Services*, the United States argues that Plaintiffs stand at the "cusp of tax liability" because they failed to comply with the Notice's reporting requirement and the IRS proposed § 6707A penalties against them.  Docs. 23 at 17-18, 30 at 7 (quoting *CIC Services* 141 S. Ct. at 1591).  But it is count five, not count one, that addresses Plaintiffs' possible penalties and their rescission.  Count one focuses solely on the IRS's alleged failure to follow APA procedures when it promulgated Notice.  And count one was brought before any tax penalty had been assessed.

The United States notes that tax advisors like the plaintiff in *CIC Services* incur significant costs in complying with a notice's reporting requirements and those costs may be greater than any potential tax liability the taxpayer may face.  Doc. 23 at 18 (citing *CIC Services*, 141 S. Ct. at 1594-95 (Sotomayor, J., concurring)).  The government

argues that Plaintiffs in this case face no similar reporting burden under Notice 2007-83 and their suit does not seek relief from such a burden. *Id.* But the complaint's allegations must be accepted as true at this stage, and they assert that Notice 2007-83 requires Plaintiffs to "engage in the costly, time-consuming expense of completing a Form 8886." Doc. 1 ¶ 18. Plaintiffs seek an order that the Govig trust "is not subject to the reporting requirements of Notice 2007-83[.]" *Id.* at 15. Thus, although Plaintiffs are taxpayers rather than tax advisors, they seek relief from the Notice's reporting requirement and resulting compliance costs. *Id.* ¶¶ 18, 54, 70, 77.[4] What is more, Plaintiffs' failure to comply with the reporting requirement subjects them to potential criminal penalties under § 7203, a fact that "clinches the case" for treating count one as a claim to set aside the Notice and not to restrain its back-up tax. *CIC Services*, 141 S. Ct. at 1592.

The United States cites several cases to show that this action falls outside the holding of *CIC Services*. Docs. 30 at 7, 33 at 2. The cases are inapposite.

In *Hancock County Land Acquisitions, LLC v. United States*, No. 21-12508, 2022 WL 3449525 (11th Cir. Aug. 17, 2022), the plaintiff sought to prevent the IRS from issuing a deficiency notice alleging that the plaintiff had improperly claimed a $180 million deduction on its 2016 return, resulting in an underpayment of taxes. 2022 WL 3449525, at *2. The Eleventh Circuit found that because the relief sought "would restrain the IRS from assessing and collecting those taxes, it [was] barred by the AIA." *Id.* The Eleventh Circuit emphasized that, "[u]nlike in *CIC Services*, the 'legal rule at

---

[4] Writing separately in *CIC Services*, Justice Sotomayor stated that the result in that case might be different if CIC were a taxpayer because "a tax on noncompliance may operate as a rough substitute for the tax liability [the taxpayer] has evaded by withholding required information[.]" 141 S. Ct. at 1594. Compared with tax advisors, "taxpayers may incur less expense in collecting and reporting their own financial information." 141 S. Ct. at 1594. But this distinction was not addressed in the Court's holding, and Justice Sotomayor acknowledged that the case provided "no occasion for the Court to inquire into the full quantity or variety of IRS reporting requirements that are backed by tax penalties, nor to predetermine whether the AIA would allow hypothetical taxpayers to challenge those requirements in court." *Id.* at 1595. The holding of *CIC Services*, not these concurring thoughts about possible future cases, must control the Court's decision.

issue' [was] a tax provision, not a reporting requirement backed up with a tax provision." *Id.* (quoting *CIC Services*, 141 S. Ct. 1593).   *Hancock* does not apply here because Plaintiffs challenge the reporting requirement in Notice 2007-83.

In *Harper v. Rettig*, 46 F.4th 1 (1st Cir. 2022), the IRS had obtained information on the plaintiff's virtual currency accounts through a third-party summons.   46 F.4th at 2-4.   The plaintiff sought injunctive relief requiring the IRS to expunge that information from its records.   *Id.* at 5.   Relying on *CIC Services*, the First Circuit held that the AIA did not bar the claim because it targeted "the IRS's continued retention of [the plaintiff's] personal financial information" as opposed to a tax.   *Id.* at 8.   *Harper* undermines Plaintiffs' position, the United States contends, because Plaintiffs "face a specific proposed tax assessment and plainly seek to restrain that assessment and collection on it." Doc. 30 at 7.   But count one asserts an APA procedural challenge to the Notice 2007-83. It does not address any tax penalties or their rescission.

The United States' citation to *Franklin v. United States*, 49 F.4th 429 (5th Cir. 2022), is also not helpful.   Doc. 33 at 2.   The plaintiff in that case did not challenge a standalone reporting requirement like Notice 2007-83.   He instead challenged the IRS's assessment of tax penalties based on an alleged procedural failure under 26 U.S.C. § 6751(b), which requires that penalties be approved in writing by a supervisor of the determining agent.   *Franklin*, 49 F.4th at 432-33.   The Fifth Circuit affirmed dismissal under the AIA because the claims "challenge[d] the validity of the tax assessment itself." *Id.* at 434.   The Fifth Circuit made clear that its holding was consistent with *CIC Services*, explaining that while a "challenge to reporting requirements backed by a tax penalty can proceed" – the very case we have here – "a challenge to the assessment or collection of a tax itself is still barred."   *Id.* (citing *CIC Services*, 141 S. Ct. at 1588-89).

The United States' citation to *Silver v. IRS*, No. CV 20-1544 (CKK), 2022 WL 16744921 (D.D.C. Nov. 7, 2022), is unhelpful as well. Doc. 33 at 2. The case challenged regulations effecting the 2017 Tax Cuts and Jobs Act, which changed the tax rate that a shareholder pays on the earnings of a foreign corporation if those earnings are repatriated

to the United States.  2022 WL 16744921, at *1-2 (citations omitted).  Because the "regulations define how [the tax-rate] is calculated, they determine, in part, the ultimate amount of tax paid." *Id.* at *2.  The district court concluded that the AIA barred the suit because the plaintiffs aimed "to interrupt a tax rule governing who pays what amount of tax," not an information-gathering notice. *Id.* at *3.

Finally, the government argues that the possible imposition of misdemeanor criminal liability for violation of Notice 2007-83 does not bring this case within the holding of *CIC Services* because Plaintiffs in this case, unlike the plaintiff in *CIC Services*, have already violated the Notice and therefore already face criminal liability. Doc. 23 at 19.  The government also argues that Plaintiffs fail to allege an imminent risk of criminal prosecution. *Id.* at 19 n.5.  But potential criminal penalties were relevant in *CIC Services* because they necessitated bringing a pre-enforcement case to set aside the allegedly unlawful notice.  The usual route for contesting taxes would not protect the plaintiff from criminal liability.  The plaintiff would have to disobey the reporting requirement, suffer the imposition of a penalty, pay the penalty under protest, and then file suit for refund of the penalty.  This procedure might set up a tax refund claim, but it would not protect the plaintiff from criminal liability for violating the notice. *CIC Services*, 141 S. Ct. at 1592 & n.3.  "So the criminal penalties here practically necessitate a pre-enforcement, rather than a refund, suit[.]" *Id.* at 1592.  And the Supreme Court did not say that criminal prosecution must be imminent before an APA challenge can be brought.

### b.    Count Two – APA Unauthorized Agency Action Claim.

The Court reaches the same conclusion with respect to count two.  Doc. 1 ¶¶ 65-80.  This count also focuses solely on the validity of Notice 2007-83.  It asserts that the IRS acted without authorization when it issued Notice 2007-83 because the notice fails to describe the listed transactions with the specificity required by 26 U.S.C. § 6707A(c)(2). *Id.* ¶¶ 68-71.  The APA authorizes a court to set aside agency action that exceeds "statutory jurisdiction, authority, or limitations[.]" 5 U.S.C. § 706(2)(C).  Count

two alleges that the notice, if not set aside, "will continue to cause undue confusion and improperly and unnecessarily require Plaintiffs and other taxpayers to file a Form 8886." Doc. 1 ¶ 77.   Count two does not mention the penalties assessed against Plaintiffs or seek their rescission.

Because count two challenges only Notice 2007-83 and its reporting requirement, the count is not barred by the AIA or the DJA.   As *CIC Services* held, "[a] reporting requirement is not a tax; and a suit brought to set aside such a rule is not one to enjoin a tax's assessment or collection."   141 S. Ct. at 1588-89; *see also Harper*, 46 F.4th at 8 ("Because appellant's suit challenges the IRS's information-gathering authority and the [AIA] limits our jurisdiction only in suits involving assessment and collection, the [AIA] is not an applicable exception to the United States' waiver of sovereign immunity in 5 U.S.C. § 702.") (citing *CIC Services*, 141 S. Ct. at 1588-89).

### c.   Count Three – APA Arbitrary and Capricious Claim.

The same holds true for count three.   Doc. 1 ¶¶ 81-88.   The count alleges that the IRS acted arbitrarily and capriciously when it issued Notice 2007-83 because it failed to provide adequate reasons for the Notice and failed to permit public comment.   Doc. 1 ¶¶ 84-85.   The APA permits a court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"   5 U.S.C. § 706(2)(A).   Count three asks that the Notice be set aside under the APA and never mentions the penalties against Plaintiffs.   *Id.* ¶ 88.   Under *CIC Services*, it is not barred by the AIA or DJA.[5]

### d.   Count Four – Jeanette's Refund Claim.

Count four alleges that Jeanette is entitled to a refund of the $29,111.26 tax penalty she paid for 2015 based on the stipulated judgment in *Govig II* and her administrative request for a refund through the filing of Form 843 in March 2021.   *Id.*

---

[5] Given the Court's conclusion that the AIA and DJA do not bar counts one through three under *CIC Services*, the Court need not address the government's additional argument that specific exceptions to the AIA and DJA do not apply here. Doc. 23 at 19.  The Court is not relying on those exceptions.

¶¶ 90-95.  Because Jeanette has exhausted her administrative remedies, *see* § 7422(a), the Court has jurisdiction over this refund claim under § 1346(a)(1).  *See* Doc. 23 at 6-7, 14; *United States v. Williams*, 514 U.S. 527, 536 (1995) ("§ 1346(a)(1) clearly allows one from whom taxes are erroneously or illegally collected to sue for a refund of those taxes").

The United States argues that count four is moot because the IRS has granted Jeanette's administrative refund claim.  Docs. 23 at 14, 30 at 12.  It asserts that the IRS granted her request for a refund of the 2015 penalty in September 2022, and then immediately credited that amount to a 2016 penalty it recently assessed against her.  No funds were returned to Jeanette.  Doc. 33 at 2

The United States does not explain how the Court can dispose of count four on a motion to dismiss which is confined to analysis of the pleadings, and cites no legal authority to show that the processing of the claim renders Jeanette's APA challenges to Notice 2007-83 moot.  *See id.*; *see also Hooks for & on Behalf of NLRB v. Nexstar Broad., Inc.*, 54 F.4th 1101, 1112 (9th Cir. 2022) (applying the "exception to mootness for disputes that are 'capable of repetition, yet evading review'").  In addition, Plaintiffs made clear in oral argument that (1) they dispute the admissibility of the unauthenticated notice provided by the government to show the refund, (2) Jeanette's 2016 assessment (which apparently came after the 2015 refund was processed) does not say that the 2015 penalty has been applied to 2016, and (3) accrued interest and other issues might need to be resolved as part of count four.  Given these factual complexities, the Court cannot find at this stage that count four is fully moot.

What is more, because Jeanette asserts a procedurally sound refund claim, she remains able to challenge the legality of Notice 2007-83 in counts one through three.  Those challenges are not barred by the AIA or the DJA.  *See CIC Services*, 141 S. Ct. at 1588 ("CIC could contest the legality of the reporting rules . . . by violating them and suing for a refund of a later tax penalty"); *Bob Jones Univ. v. Simon*, 416 U.S. 725, 746 (1974) (refund suits offer taxpayers a full opportunity to litigate the legality of IRS

1  decisions); *Mann Constr.*, 27 F.4th at 1142-48 (considering the plaintiffs' APA challenge

2  to Notice 2007-83 in a refund suit); *see also* Motion to Dismiss, Doc. 23 at 7 n.2

3  (explaining that because the plaintiffs in *Mann* "made their APA arguments in the context

4  of a refund claim, the AIA and DJA did not bar the action").  The Court still must decide,

5  however, whether Jeanette's assertion of counts one through three are time-barred, as

6  addressed below.

7  **e.      Count Five – DJA Claim for Rescission of Tax Penalties.**

8  Count five alleges that because Notice 2007-83 was promulgated in violation of

9  the APA, the IRS "continues to act unlawfully by its failure and/or refusal to rescind

10  penalties assessed against Plaintiffs in 2015-2017."  Doc. 1 ¶¶ 99-100.  The count seeks

11  to have the tax penalties rescinded and asks for "a declaratory judgment providing for this

12  specific remedy."  *Id.* ¶ 103; *see id.* at 15 (requesting an order requiring the IRS to

13  "rescind the § 6707A penalties assessed on Plaintiffs in 2020 with respect to Tax Years

14  2015-2017").

15  Because count five specifically seeks to prevent the IRS from assessing and

16  collecting tax penalties, it is barred by the AIA and DJA.  26 U.S.C. § 7421(a); 28 U.S.C.

17  § 2201(a); *George*, 2022 WL 562758, at *3 ("Plaintiff seeks to restrain the assessment of

18  section 6702 penalties, which . . . are 'taxes' contained in Subchapter 68B.  The AIA and

19  DJA bar this suit."); *Ridley*, 2022 WL 351072, at *8 ("Unlike *CIC Services*, Ridley does

20  not seek to enjoin 'a standalone reporting requirement, whose violation may result in both

21  tax penalties and criminal punishment.'  Rather, in Count V he asks the Court to 'stop

22  further collections actions until this case is resolved.'  This is a clear challenge to a tax

23  that is barred by the [AIA], and nothing in *CIC Services* holds otherwise.") (citations

24  omitted).

25  Plaintiffs contend that there are no grounds to dismiss count five because the

26  "Sixth Circuit's vacatur of Notice 2007-83 applies to all regulated parties – not just the

27  plaintiffs in *Mann*."  Doc. 27 at 5-6.  The Court has rejected this argument above.  Nor do

28

20

1   Plaintiffs explain how the Sixth Circuit's ruling on the merits would solve the
2   jurisdictional issue presented here.

3       Plaintiffs further contend that the *Williams Packing* exception to the AIA applies.
4   Doc. 27 at 9-10 (citing *Enochs v. Williams Packing & Navigation Co., Inc.*, 370 U.S. 1
5   (1962)).  Under this narrow exception, the AIA does not bar a tax suit "if it is clear that
6   under no circumstances could the [g]overnment ultimately prevail . . . [and] if equity
7   jurisdiction otherwise exists." *Williams Packing*, 370 U.S. at 7; *see Stonecipher v. Bray*,
8   653 F.2d 398, 401 (9th Cir. 1981) (setting forth the exception's two-part test).  "'Only if
9   it is . . . manifest, under the most liberal view of the law and the facts, that the
10  government cannot [prevail]' is the first part of the test satisfied." *Church of Scientology*
11  *of Cal. v. United States*, 920 F.2d 1481, 1486 (9th Cir. 1990) (citation omitted).  The
12  burden of showing that the government's position is baseless is on the taxpayers.  *See id.*

13      Plaintiffs have not met their burden.  They argue that the United States cannot
14  prevail because Notice 2007-83 "no longer exists" after *Mann*.  Doc. 27 at 6, 9.  The
15  Court has not accepted this assertion.

16      Because Plaintiffs have not shown that the United States has no chance of
17  prevailing, the *Williams Packing* exception does not apply and count five must be
18  dismissed under the AIA.  *See* 370 U.S. at 7-8.  The Court need not address the second
19  part of the *Williams Packing* test – whether "equity jurisdiction otherwise exists."  *Id.*
20  at 7.[6]

21  **B.   Issue Preclusion.**

22      The United States contends that issue preclusion bars Plaintiffs' APA claims
23  because the district court in *Govig I* dismissed identical claims.  Doc. 23 at 25.  But even
24  when the elements of issue preclusion are met, an exception applies "if there has been an

25  ――――――――――――――

26      [6] Plaintiffs have filed a notice of supplemental authority regarding the effect of
27  court decisions vacating an agency rule.  Doc. 31.  The United States moves for leave to
    respond or strike the arguments made in the notice.  Doc. 32.  The government's motion
28  will be denied because Plaintiff's supplemental arguments do not change the Court's
    analysis.

intervening 'change in the applicable legal context.'" *Herrera v. Wyoming*, 139 S. Ct. 1686, 1697 (2019) (quoting *Bobby v. Bies*, 556 U.S. 825, 834 (2009) (cleaned up)). "The change-in-law exception recognizes that applying issue preclusion in changed circumstances may not 'advance the equitable administration of the law.'" *Id.* (quoting *Bobby*, 556 U.S. at 836-37); *see Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853, 867 (9th Cir. 2021) (explaining that issue preclusion does not apply where "a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws") (quoting Restatement (Second) of Judgments § 28 (1982)).

Plaintiffs contend that the Supreme Court's decision in *CIC Services* constitutes an intervening change in the law. Doc. 27 at 13-14. The Court agrees.

Before *CIC Services*, the Supreme Court embraced a broad and straightforward rule for determining whether a suit is barred by the AIA. *See Bob Jones*, 416 U.S. 725 (1974); *Alexander v. "Americans United" Inc.*, 416 U.S. 752 (1974). The AIA barred any suit that would "necessarily preclude" the assessment or collection of a tax. *Bob Jones*, 416 U.S. at 732; *see Americans United*, 416 U.S. at 760-61. *Bob Jones* and *Americans United* instructed courts to look to the effect of a suit. If the suit would prevent the assessment or collection of a tax, it was barred.

The Sixth Circuit applied this test in holding that CIC's suit was barred by the AIA. *See* 925 F.3d at 256. In reversing that decision, the Supreme Court essentially "carve[d] out a new exception to *Americans United* and *Bob Jones* for pre-enforcement suits challenging regulations backed by tax penalties." 141 S. Ct. at 1595 (Kavanaugh, J., concurring). The Court decided "to narrow *Americans United* and *Bob Jones* because the broad 'effects' rule articulated in those decisions is hard to square with the text of the [AIA], which bars only a pre-enforcement 'suit for the purpose of restraining the assessment or collection of any tax.'" *Id.*

*Govig I* held that the AIA barred Plaintiffs' claims "because the *ultimate effect* of [the] action [was] to restrain the assessment of a penalty under § 6707A(b)[.]" 2020 WL

6048301, at *4 (emphasis added).  This Court reaches a different conclusion in light of *CIC Services*.  Because *CIC Services* constitutes an intervening change in the law, the United States' issue preclusion argument lacks merit.

### C.    Jurisdiction Under the APA.

Plaintiffs allege that the Court has subject matter jurisdiction pursuant to the APA, 5 U.S.C. § 702.  *Id.* ¶ 11.  The United States correctly observes that the APA provides no independent basis for subject matter jurisdiction.  Doc. 23 at 26; *see Allen v. Milas*, 896 F.3d 1094, 1099 (9th Cir. 2018) ("[T]he APA waive[s] the sovereign immunity of the United States, but such a waiver is on its terms neither coextensive with subject matter jurisdiction nor a guarantee of a federal forum."); *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998) (same).  But the Court clearly has subject matter jurisdiction under the federal question statute, 28 U.S.C. § 1331, which provides that district courts have jurisdiction over claims "arising under the Constitution, laws, or treaties of the United States."  *See Califano*, 430 U.S. at 105 (explaining that § 1331 "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate"); *Allen*, 896 F.3d at 1099 (same); *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (same).  Plaintiffs' complaint does not expressly allege federal question jurisdiction (*see* Doc. 1 ¶ 11), but this omission "is not fatal since the facts alleged are sufficient to support such jurisdiction."  *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 70 n.14 (1978).

The United States also contends that Plaintiffs cannot bring claims under the APA because a refund suit under § 7422 would provide Plaintiffs an adequate legal remedy.  Doc. 23 at 26 (citing 5 U.S.C. § 704).  But as construed above, Plaintiffs' APA claims – counts one through three – do not seek the refund of any tax penalty.  They assert APA challenges to Notice 2007-83.  Doc. 1 ¶¶ 47-88.

Nor does the government explain how a refund suit by Plaintiffs would be an adequate legal remedy for potential criminal liability.  Before September 2022, when the

IRS finally assessed penalties for the years 2016 and 2017 (*see* Doc. 44), Plaintiffs had no ability to pay penalties and sue for a refund.  Plaintiffs thus were subject to criminal liability for several years before they could challenge the validity of the assessments in a refund suit.  The United States has not shown that a refund suit provided Plaintiffs an adequate legal remedy in these circumstances.  *See CIC Services*, 141 S. Ct. at 1584 ("[T]he presence of criminal penalties forces CIC to bring an action in just this form, with the requested relief framed in just this manner.  The Government's proposed alternative procedure – having a party like CIC disobey the Notice and pay the resulting tax penalty before bringing a suit for a refund – would risk criminal punishment.").

### D.    Statute of Limitations.

#### 1.    The Six-Year Limitations Period.

According to 28 U.S.C. § 2401(a), "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  The parties agree that this limitations period applies to APA claims, but disagree on when Plaintiffs' APA claims first accrued.  The United States argues that the claims accrued when Notice 2007-83 was issued in November 2007 because the claims allege only procedural or policy challenges to the Notice.  Doc. 23 at 27-30.  Plaintiffs argue that the claims allege substantive challenges that did not accrue until the IRS applied the Notice to them in 2019.  Doc. 27 at 17-19.

In the Ninth Circuit, two basic accrual rules exist for APA claims.

First, if a claim challenges the procedures the agency used in issuing a rule or the policy behind the rule, the claim accrues when the rule is issued.  *See Sierra Club v. Penfold*, 857 F.2d 1307, 1316 (9th Cir. 1988) ("Sierra Club . . . [asserts] a challenge to the procedural deficiencies in adoption of the regulations in October of 1987.  More than six years elapsed between the time the alleged procedural deficiencies occurred and the time of Sierra Club's . . . complaint.  Under § 2401(a), the procedural challenge to the Notice regulations [is] time-barred."); *Shiny Rock Mining Corp. v. United States*, 906 F.2d 1362, 1365-66 (9th Cir. 1990) (explaining that *Penfold* "declined to adopt a rule

under which 'claimants such as Sierra Club could challenge regulations when administered by the federal agency, rather than when adopted").

A plaintiff cannot extend the limitations period by arguing that its procedural or policy challenge accrued when the agency applied the rule to the plaintiff. *Id.* at 1366 ("Shiny Rock cannot recommence the statutory period by filing [a mining] application in conflict with the [BLM's land] withdrawal more than six years after publication in the Federal Register"); *see also Cal. Sea Urchin Comm'n v. Bean*, 828 F.3d 1046, 1050 (9th Cir. 2016) ("Our cases on this topic determine the timeliness of APA challenges according to when the applicable agency action was taken.  We have held that a statute of limitations may run against a plaintiff even if it is not injured until more than six years after the relevant agency action became final.") (citing *Shiny Rock*, 906 F.2d at 1363).

*In Wind River Mining Corp. v. United States*, 946 F.2d 710 (9th Cir. 1991), the Ninth Circuit provided the following explanation for this rule:

> If a person wishes to challenge a mere procedural violation in the adoption of a regulation or other agency action, the challenge must be brought within six years of the decision.  Similarly, if the person wishes to bring a policy-based facial challenge to the government's decision, that too must be brought within six years of the decision.  This result, even if not dictated by *Penfold* and *Shiny Rock*, would make the most sense.  The grounds for such challenges will usually be apparent to any interested citizen within a six-year period following promulgation of the decision.

946 F.2d at 715.

Second, a plaintiff may challenge the substance of an agency rule as exceeding statutory or constitutional authority by bringing an APA claim within six years of the agency's application of the rule to the plaintiff.  *See id.* at 715-16 (noting that "[s]uch challenges, by their nature, will often require a more 'interested' person than generally will be found in the public at large'); *Cal. Sea Urchin*, 828 F.3d at 1051 (explaining that because the plaintiff in *Wind River* "alleged that the BLM's 1979 rule . . . violated its statutory authority, we recognized that subsequent final agency actions applying the 1979 rule would also allegedly exceed the agency's statutory authority") (citation omitted).

Thus, "[u]nder *Wind River*, challenges to a 'mere procedural violation in the adoption of a regulation or other agency action' must be brought within six years of the agency rulemaking, whereas challenges to 'the substance of an agency's decision as exceeding constitutional or statutory authority' may be brought any time 'within six years of the agency's application of the disputed decision to the challenger.'" *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1077 (9th Cir. 2016) (citation omitted); *see also Hyatt v. United States Pat. & Trademark Off.*, 904 F.3d 1361, 1372 (Fed. Cir. 2018) (discussing the different accrual rules for APA claims); *Harrosh v. Tahoe Reg'l Plan. Agency*, No. 2:21-cv-01969-KJM-JDP, 2022 WL 16856187, at *9-10 (E.D. Cal. Nov. 10, 2022) (same).

The Court agrees with the United States that the APA claims asserted in counts one and three are procedural challenges to Notice 2007-83. These counts are barred by § 2401(a) because they were not brought within six years of the Notice's issuance in 2007. *See* Doc. 23 at 27-28.

Count one alleges that the Court may set aside an agency rule issued without "observance of procedure" required by law, that agency rules must be published in accordance with "notice-and-comment procedures[,]" and that the IRS failed to comply with those procedures in issuing Notice 2007-83. Doc. 1 ¶¶ 49-50, 56 (citing 5 U.S.C. §§ 553, 706(2)(D)). This is a procedural challenge. *See Hyatt*, 904 F.3d at 1372 ("Hyatt argues that the PTO promulgated [the rule] without providing public notice and an opportunity to comment. Because this challenge alleges a procedural irregularity in the PTO's adoption of the rule, this right of action accrued at the time the agency made its initial decision to adopt [the rule]."); *Utu Gwaitu Paiute Tribe of Benton Paiute Rsrv. v. Dep't of Interior*, 766 F. Supp. 842, 844 (E.D. Cal. 1991) ("A more common procedural challenge concerns the failure of the administrative agency in question to comply with the notice and comment provisions of the APA, 5 U.S.C. § 553, prior to final publication of the regulation. Thus, in a procedural challenge, it is the manner in which the regulation was adopted which is in issue; the content or substance of the regulation is irrelevant."); *see also Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 220 (2016)

(noting that a legislative rule is "procedurally defective" when an agency "fails to proceed through notice-and-comment rulemaking").

Count three also asserts a procedural defect. It alleges that the IRS's actions in issuing the Notice were arbitrary and capricious because the IRS failed to permit public comment and did not provide adequate reasons for issuing the Notice. Doc. 1 ¶¶ 82-86 (citing 5 U.S.C. § 706(2)(A)). As noted above, failure to provide public comment is a procedural flaw. Similarly, an APA claim based on failure to explain the agency's reasons alleges "a procedural violation in the adoption of [the rule]." *Perez-Guzman*, 835 F.3d at 1077 (citing *Wind River*, 946 F.2d at 714); *see Encino Motorcars*, 579 U.S. at 221 ("One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions. . . . [W]here the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious[.]") (citing § 706(2)(A)).

Count two, in contrast, asserts a substantive challenge. Such a challenge "is based on grounds that [the agency's rule] exceeds statutory authorization, or that its authorizing legislation is unconstitutional." *Utu Gwaitu Paiute Tribe*, 766 F. Supp. at 844; *see Wind River*, 946 F.2d at 715. Count two alleges that while § 6707A authorizes the IRS to identify listed transactions, such transactions "must be specifically identified." Doc. 1 ¶ 68. It claims that Notice 2007-83 does not describe the elements of the listed transaction or their claimed tax benefits "with the requisite specificity." *Id.* ¶¶ 69-70. This is a challenge to the substance of the Notice – an argument that its language is too vague to provide fair notice to taxpayers and to satisfy statutory requirements. Plaintiffs ask the Court to set aside the Notice under 5 U.S.C. § 706(2)(C), which prohibits agency action "in excess of statutory jurisdiction, authority, or limitations[.]" *Id.* ¶¶ 67, 77; *see also id.* ¶ 14 ("Notice 2007-83 is *ultra vires* in nature, lacking underlying authority[.]"). Because count two challenges the allegedly too-vague substance of Notice 2007-83 and the IRS's statutory authority to issue it, count two is a substantive challenge to the rule. *See Wind River*, 946 F.2d at 714 ("Wind River asserts that the BLM's designation of

[Wilderness Study Area] 243 was *ultra vires* as exceeding the agency's statutory authority.  We think that different considerations guide the application of the statute of limitations to such [substantive] challenges[.]").  As a result, count two is not barred by the six-year limitations period.  The claim was brought within six years of when the IRS applied the Notice to Plaintiffs in 2019.  *See id.* at 716 ("We hold that a substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of that decision to the specific challenger.").

The United States contends that count two is a facial challenge to the Notice, not an "as-applied" claim.  Docs. 23 at 28-29, 30 at 15-16.  But substantive challenges can be "both 'facial' and 'as applied' attacks."  *Utu Gwaitu Paiute Tribe*, 766 F. Supp. at 844; *see also Cal. Sea Urchin*, 828 F.3d at 1050 ("Though FWS characterizes Plaintiffs' complaint as a 'facial' challenge to FWS's authority to cancel the translocation program, that argument goes to the merits of Plaintiffs' underlying action.  It does not make Plaintiffs' 2013 challenge to FWS's 2012 agency action untimely.").[7]

### 2.   Equitable Tolling.

Plaintiffs contend that the AIA prevented them from challenging Notice 2007-83 before *CIC Services* was decided in 2020 and they therefore are entitled to equitable tolling of the limitations period.  Doc. 27 at 27 at 14-17.  The party "seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  Plaintiffs have not met their burden with respect to the first element.

As explained in *Wind River*, the grounds for procedural challenges to an agency decision "will usually be apparent to any interested citizen within a six-year period following promulgation of the decision[.]"  946 F.2d at 715.  Actual knowledge of the

---

[7] The government asserted during oral argument that count five is also barred by the statute of limitations, but that argument was not made in the motion to dismiss.  *See* Doc. 23 at 27-29 (arguing only that the APA claims in counts one through three are time barred).

agency's decision "is not required for a statutory period to commence" because "[p]ublication in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance." *Shiny Rock*, 906 F.2d at 1364 (citation omitted).

Plaintiffs did not need to have a trust involving cash value life insurance policies "to discover procedural errors in the adoption of [Notice 2007-83]." *Wind River*, 946 F.3d at 715. And yet they did not bring their procedural challenges to Notice 2007-83 until September 2019 – nearly twelve years after the Notice was issued and six years after the limitations period had expired. *See Govig I*, Doc. 1 ¶¶ 112-38 (APA claims asserting that the IRS failed to provide notice-and-comment procedures and adequate reasons for the Notice). Because Plaintiffs did not diligently pursue their procedural challenges to Notice 2007-83, they are not entitled to equitable tolling with respect to counts one and three. *See* Doc. 30 at 13; *Wind River*, 946 F.2d at 715 ("The government's interest in finality outweighs a late-comer's desire to protest the agency's action as a matter of policy or procedure."); *see also Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (explaining that equitable tolling is "unavailable in most cases" because the "threshold necessary to trigger equitable tolling is very high").

The government notes that a "statute of limitations may run against a plaintiff even if it is not injured until more than six years after the relevant agency action became final." Doc. 23 at 30 (quoting *Cal. Sea Urchin*, 828 F.3d at 1050). Plaintiffs assert that this quote merely explains the Ninth Circuit's "outdated" decision in *Shiny Rock*. Doc. 27 at 16. But while *California Sea Urchin* found that the plaintiffs' claims were more analogous to *Wind River* than *Shiny Rock*, nothing in the decision suggested that *Shiny Rock* is no longer good law. *See* 828 F.3d at 1050-52.[8]

---

[8] Plaintiffs further assert that the United States waived the statute of limitations defense by not asserting it in *Mann* and because the IRS has somehow taken the position that Notice 2007-83 was not a "final" agency action. Doc. 27 at 19-21. Plaintiffs cite no legal authority suggesting that a party waives an argument in one lawsuit because it failed to make the argument in a different lawsuit against different parties, and Plaintiffs provide no clear explanation for how any alleged non-finality of the Notice constitutes a

1    **IT IS ORDERED:**

2    1.    The United States' motion to dismiss (Doc. 23) is **granted** with respect to

3    counts one, three, and five, and **denied** with respect to counts two and four.

4    2.    The United States' motion for leave to respond or strike (Doc. 32) is

5    **denied**.

6    3.    The Court will set a case management conference by separate order.

7    Dated this 22nd day of March, 2023.

8

9

10                                    David G. Campbell
                                      Senior United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   waiver.  *See* Doc. 30 at 17-19.