**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Govig & Associates, Inc., an Arizona corporation; Todd A. Govig; and Richard A. Govig and Jeanette H. Govig, spouses,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America; Internal Revenue Service; and Department of the Treasury,<br><br>Defendants. | No. CV-22-00579-PHX-DGC<br>**ORDER** |

The Internal Revenue Service ("IRS") assessed tax penalties against Plaintiffs after determining that they had failed to disclose their participation in a "listed transaction" described in IRS Notice 2007-83. Plaintiffs contend that the Notice was issued in violation of the Administrative Procedure Act ("APA"). Doc. 1. They assert five claims and seek an order setting the Notice aside, requiring the refund of a penalty paid for 2015, and declaring that penalties proposed for 2015-2017 must be rescinded. *Id.* ¶¶ 47-103.

The Court dismissed counts one, three, and five. Doc. 45. The parties have filed motions for summary judgment on counts two and four. Docs. 55, 56. The motions are fully briefed and oral argument will not aid the Court's decision. For reasons stated below, the Court will grant summary judgment in favor of Defendants.

I.     **Background.**

     A.     **IRS Disclosure Requirements and Notice 2007-83.**

A federal statute obligates taxpayers to include information in a tax return or statement when IRS regulations require it.  26 U.S.C. § 6011(a).  An IRS regulation requires taxpayers to disclose their participation in reportable transactions the agency has selected for close scrutiny.  26 C.F.R. § 1.6011-4(a).  To incentivize disclosure, Congress has authorized the IRS to impose tax penalties on those who fail to disclose required information about reportable transactions. 26 U.S.C. § 6707A(a).  Reportable transactions include "listed transactions," which the regulation defines as transactions that are "the same as or substantially similar to one of the types of transactions that the [IRS] has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance as a listed transaction."  26 C.F.R. § 1.6011-4(b)(2).

"As the regulation states, one of the ways the IRS identifies listed transactions is by issuing published notices." *Interior Glass Sys., Inc. v. United States*, 927 F.3d 1081, 1083 (9th Cir. 2019).  In November 2007, the IRS issued Notice 2007-83, titled "Abusive Trust Arrangements Utilizing Cash Value Life Insurance Policies Purportedly to Provide Welfare Benefits."  2007-2 C.B. 960, 2007 WL 3015114 (Nov. 5, 2007).  Certain trust arrangements using cash value life insurance policies – which combine life insurance coverage with an investment account – were being used by small businesses to provide cash and other property to business owners on a tax-favored basis.  The trustee in such an arrangement uses contributions from the business to purchase cash value life insurance policies on the lives of the business owners.  The business deducts the payments to the trust, thereby reducing its taxable income, but the business owners do not include the payments in their own taxable income.  When the trust is terminated after several years, the cash value that has accumulated in the insurance policies is distributed to the business owners. *See* 2007-2 C.B. 960; *Interior Glass*, 927 F.3d at 1083.

Notice 2007-83 informs taxpayers and their advisors that such trust arrangements are "listed transactions." *Id.*  Participants must disclose the transactions to the IRS by

2

filing a Form 8886 disclosure statement.  26 C.F.R. § 1.6011-4(d).  Upon disclosure, the IRS can challenge the deductions by the business and seek to include the payments made to the trust in the business owners' taxable income.  Failure to file the required disclosure statement can result in tax penalties under 26 U.S.C. § 6707A.

### B.    Facts and Procedural History.

Govig & Associates (the "business") is an executive recruiting agency owned by Plaintiffs Todd Govig and Richard and Jeanette Govig.  The Govigs are participants in a Death Benefit and Restricted Property Trust implemented by the business in 2015 (the "Govig trust").  The IRS determined that the Govig trust was a listed transaction under Notice 2007-83 and that Plaintiffs failed to disclose their participation.  In August 2019, the IRS assessed § 6707A penalties against Plaintiffs for 2015, which they paid.  In October 2020, the IRS proposed the assessment of additional § 6707A penalties against Plaintiffs for the years 2015-2017.  *See* Doc. 1 ¶¶ 1-2, 26-31, 40; Doc. 58 ¶¶ 1-6.

Plaintiffs filed suit to have Notice 2007-83 set aside under the APA.  *See* Doc. 1, *Govig & Assocs., Inc. v. United States*, No. CV-19-05185-PHX-SMB (D. Ariz. Sept. 9, 2019) ("*Govig I*").  The district judge dismissed the suit for lack of subject matter jurisdiction.  Doc. 32.

Plaintiffs filed suit again, seeking refund of the § 6707A penalties paid for 2015.  *See* Doc. 1, *Govig & Assocs., Inc. v. United States*, No. CV-20-02278-PHX-DLR (D. Ariz. Nov. 24, 2020) ("*Govig II*").  The United States agreed that the business, Todd, and Richard were entitled to refunds because they had not participated in a listed transaction in 2015 and had filed administrative refund claims before filing suit.  *See* Doc. 19. Jeanette was not entitled to a refund because she had not filed an administrative claim. *Id.*  In May 2021, the district judge in this second lawsuit entered a stipulated judgment requiring the IRS to credit the business, Todd, and Richard with overpayments and accrued interest for 2015.  Doc. 20.  Jeanette's refund claim was dismissed without prejudice.  *Id.*

Plaintiffs filed this lawsuit in April 2022.  Doc. 1.  The complaint asserts five claims: (1) failure to follow notice-and-comment procedures for Notice 2007-83 in violation of the APA; (2) unauthorized agency action in violation of the APA; (3) arbitrary and capricious agency action in violation of the APA; (4) refund of the penalty Jeanette paid for 2015; and (5) declaratory judgment and rescission for the additional penalties proposed against Plaintiffs for 2015-2017.  *Id.* ¶¶ 47-103.

When Plaintiffs brought this suit, the IRS had not yet processed an administrative refund claim Jeanette filed in March 2021.  Doc. 55 ¶ 15.  In July 2022, the United States determined that Jeanette was entitled to a refund for 2015, and abated the § 6707A penalty and accrued underpayment interest imposed against Jeanette.  Doc. 58 ¶¶ 16-17.

The United States then moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6).  Doc. 23.  The Court found the APA claims in counts one and three to be barred by the six-year statute of limitations because they were procedural challenges to Notice 2007-83, and dismissed the rescission claim in count five as barred by the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act.  Doc. 45 at 20-21, 24-27.  The APA claim in count two was not barred by the statute of limitations because it asserted a substantive vagueness challenge to Notice 2007-83.  *Id.* at 27-28.  And the Court rejected the United States' argument that Jeannette's refund claim in count four was fully moot.  *Id.* at 18-20.  The parties now move for summary judgment on counts two and four.  Docs. 55, 56.[1]

## II.     Summary Judgment Standard.

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of

---

[1] The United States moves, in the alternative, for judgment on the pleadings under Rule 12(c).  Doc. 55 at 1.  Judgment on the pleadings is appropriate "when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Garcia v. Vitus Energy, LLC*, 605 F. Supp. 3d 1188, 1198 (D. Alaska 2022) (citations omitted).  But when matters outside the pleadings are presented, as they are here, "the motion must be treated as one for summary judgment under Rule 56."  *Id.* (quoting Fed. R. Civ. P. 12(d)).  The United States' alternative request for judgment on the pleadings is denied.

law.   Fed. R. Civ. P. 56(a).   The moving party "bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The Court must view the evidence in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and draw justifiable inferences in that party's favor, *Anderson*, 477 U.S. at 255.

## III.   Count Two – Unauthorized Agency Action Claim.

### A.   Scope of Count Two.

The APA authorizes a court to set aside agency action that exceeds "statutory jurisdiction, authority, or limitations[.]"  5 U.S.C. § 706(2)(C).  Count two claims that the IRS acted without authorization when it issued Notice 2007-83 because the notice fails to describe the listed transactions with the specificity required by 26 U.S.C. § 6707A(c)(2). Doc. 1 ¶¶ 68-70.

The United States argues that summary judgment is warranted because Notice 2007-83 is not impermissibly vague.  Doc. 55 at 15-22.  Plaintiffs' response does not focus on this vagueness argument, but instead asserts that the IRS exceeded its authority by identifying listed transactions in a notice rather than a regulation.  Doc. 56 at 13-18. The United States counters that this new theory is not alleged in count two.  Doc. 61 at 6, 16.  The Court agrees with the United States.

Count two alleges that while Notice 2007-83 generally describes the claimed tax benefits of certain trust arrangements, "neither the claimed tax benefits nor the elements of the transactions are described with the requisite specificity."  Doc. 1 ¶¶ 69-70.  It alleges that the Notice "unlawfully changes the definition of 'qualified cost' . . . using unnecessarily vague wording[.]"  *Id.* ¶ 75.  Count two claims that the Notice, if not set

aside, "will continue to cause undue confusion and improperly and unnecessarily require Plaintiffs and other taxpayers to file a Form 8886." *Id.* ¶ 77; *see also* ¶ 71 ("Moreover, by not specifically identifying the transactions subject to the Notice, the IRS is provided the opportunity to later define transactions in its opinion that are covered by the Notice."); ¶ 72 ("Notwithstanding the IRS's statutory obligation to specifically identify listed transactions, basic notions of due process require the IRS to specifically identify transactions that could result in penalties[.]").  A fair reading of count two reveals that it is limited to the vagueness argument.  It goes to some length to lay out that argument as the basis for the Notice's invalidity, never mentioning that a regulation was required instead of a notice.

Plaintiffs contend that the complaint satisfies the pleading standard in Federal Rule of Civil Procedure 8(a) because it alleges generally the IRS lacked authority to issue Notice 2007-83.  Doc. 65 at 4.  Plaintiffs cite *Briggs v. Fenstermaker*, No. 1:23-cv-00146-JLT-SAB, 2023 WL 2839755, at *5 (E.D. Cal. Apr. 7, 2023) in support, but that case makes clear that the complaint must "set forth 'who is being sued, for what relief, *and on what theory*[.]'" *Id.* at *5 (emphasis added).  This pleading standard "is required . . . to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Id.* (cleaned up).  Plaintiffs' complaint does not give the United States fair notice of the new theory contained in their summary judgment briefing.

Plaintiffs argue that the United States should have served discovery to learn more about the nature of their claims.  Doc. 65 at 5-6.  But count two plainly alleged that Notice 2007-83 was invalid because of vagueness.  The United States was not obligated to ask whether it also included an undisclosed theory.[2]

---

[2] What is more, in the parties' joint case management report the United States proposed moving for summary judgment on count two without discovery because the vagueness claim could be resolved as a question of law.  Doc. 50 at 4, 10.  Plaintiffs did not disagree, and even described count two as alleging "that Notice 2007-83 is too vague[.]"  *Id.* at 9.

Plaintiffs never moved for leave to amend the complaint to include the new theory, *see* Fed. R. Civ. P. 15(a)(2), and any such motion now would be denied as untimely and futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).[3]

### B.   Notice 2007-83 Is Sufficiently Specific.

Turning to Plaintiffs' pled claim, count two fails as a matter of law because Notice 2007-83 is not impermissibly vague.  It begins by explaining that the IRS is "aware of certain trust arrangements claiming to be welfare benefit funds and involving cash value life insurance policies that are being promoted to and used by taxpayers to improperly claim federal income and employment tax benefits."  2007-2 C.B. 960.  The Notice further states in its background section:

> Trust arrangements utilizing cash value life insurance policies and purporting to provide welfare benefits to active employees are being promoted to small

---

[3] Any such amendment would be futile because the new theory is legally incorrect. Plaintiffs assert that 26 U.S.C. § 6707A(c) provides that listed transactions can be identified only by regulation.  *Id.*  The section defines "reportable transaction" as any transaction that must be disclosed because it has a potential for tax avoidance, as determined by the IRS "*under regulations prescribed under section 6011*[.]"  26 U.S.C. § 6707A(c)(1)  (emphasis added).  Consistent with this provision, the IRS issued a regulation under § 6011 requiring taxpayers to disclose reportable and listed transactions to the IRS.  *See* 26 C.F.R. § 1.6011-4.  The regulation authorizes the IRS to identify listed transactions by "notice, regulation, or other form of published guidance[.]"  26 C.F.R. § 1.6011-4(b)(2).  Notice 2007-83 was issued pursuant to this regulation.  2007-2 C.B. 960.  It also was issued before § 6707A was enacted, and nothing in § 6707(a) suggests the regulation is invalid or precludes identification of listed transactions by notice.  *See Green Valley Invs., LLC v. Comm'r of Internal Revenue*, No. 17379-19, 2022 WL 16834499, at *11 (T.C. Nov. 9, 2022) ("[B]efore the enactment of section 6707A, Treasury regulations were issued defining a listed transaction as one 'identified by notice, regulation, or other form of published guidance.'") (quoting § 1.6011-4(b)(2)); *Green Rock, LLC v. IRS*, 654 F. Supp. 3d 1249, 1253 (N.D. Ala. 2023) (noting that § 1.6011-4 was "already in existence when Congress enacted 26 U.S.C. § 6707A").

Plaintiffs cite several cases, including *Mann Construction, Inc. v. United States*, 27 F.4th 1138, 1146 (6th Cir. 2022), for the proposition that the United States cannot rely on § 1.6011-4 as a regulation under which a listed transaction can be identified by notice. Docs. 56 at 15, 65 at 6.  But those cases address whether listing notices are exempt from the APA's notice-and-comment procedures, not whether the IRS exceeded its statutory authority (under § 6707A or otherwise) in issuing the notices.  Furthermore, § 6707A is a penalty-imposing statute.  *See Interior Glass*, 927 F.3d at 1084; *Mann Constr.*, 27 F.4th at 1146.  It concerns which types of transactions will be considered listed transactions, not the procedure for identifying them.  *See Mann Constr.*, 27 F.4th at 1146 (explaining that § 6707A "addresses a 'which transactions' question, not a 'what process' question"); *Green Valley*, 2022 WL 16834499, at *12 ("the text of section 6707A does not reference any procedures whatsoever.").

businesses and other closely held businesses as a way to provide cash and other property to the owners of the business on a tax-favored basis. The arrangements are sometimes referred to by persons advocating their use as 'single employer plans' and sometimes as '419(e) plans.' Those advocates claim that the employers' contributions to the trust are deductible under §§ 419 and 419A as qualified cost, but that there is not a corresponding inclusion in the owner's income.

*Id.* The background section describes the promoted trust arrangements in significant detail:

Under these arrangements, the trustee uses the employer's contributions to the trust to purchase life insurance policies. The trustee typically purchases cash value life insurance policies on the lives of the employees who are owners of the business (and sometimes other key employees), while purchasing term life insurance policies on the lives of the other employees covered under the plan.

It is anticipated that after a number of years the plan will be terminated and the cash value life insurance policies, cash, or other property held by the trust will be distributed to the employees who are plan participants at the time of the termination. While a small amount may be distributed to employees who are not owners of the business, the timing of the plan termination and the methods used to allocate the remaining assets are structured so that the business owners and other key employees will receive, directly or indirectly, all or a substantial portion of the assets held by the trust.

Those advocating the use of these plans often claim that the employer is allowed a deduction under § 419(c)(3) for its contributions when the trustee uses those contributions to pay premiums on the cash value life insurance policies, while at the same time claiming that nothing is includible in the owner's gross income as a result of the contributions (or, if amounts are includible, they are significantly less than the premiums paid on the cash value life insurance policies). They may also claim that nothing is includible in the income of the business owner or other key employee as a result of the transfer of a cash value life insurance policy from the trust to the employee, asserting that the employee has purchased the policy when, in fact, any amounts the owner or other key employee paid for the policy may be significantly less than the fair market value of the policy. Some of the plans are structured so that the owner or other key employee is the named owner of the life insurance policy from the plan's inception, with the employee assigning all or a portion of the death proceeds to the trust. Advocates of these arrangements may claim that no income inclusion is required because there is no transfer of the policy itself from the trust to the employees.

*Id.*; *see Interior Glass*, 927 F.3d at 1084 (explaining that the "Notice 2007-83 includes a detailed background section describing the trust arrangements covered by the notice"). The Notice "informs taxpayers and their representatives that the tax benefits claimed for these arrangements are not allowable for federal tax purposes," and that the IRS "intends to challenge the above-described transactions for various reasons." 2007-2 C.B. 960.

Importantly, Notice 2007-83 explains that "such arrangements are identified as 'listed transactions'" if they include four specific elements:

> (1) the transaction involves a trust described in 26 U.S.C. § 419(e)(3) that is purportedly a welfare benefit fund;

> (2) for determining the portion of the business's contributions to the trust that are deductible, the business does not rely on the exception in § 419(f)(5)(A) regarding collectively bargained plans;

> (3) the trust pays premiums on one or more cash-value life insurance policies that accumulate value; and

> (4) the business takes a deduction that exceeds the sum of certain specified amounts.

*Interior Glass*, 927 F.3d at 1084; *see* 2007-2 C.B. 960 ("Any transaction that has all [four] elements, and any transaction that is substantially similar to such a transaction, are identified as 'listed transactions' for purposes of § 1.6011-4(b)(2)[.]").

Plaintiffs do not argue that Notice 2007-83 fails to specify the elements of the listed transactions covered by the Notice. Nor do Plaintiffs argue that any specific element is difficult to understand or apply. Plaintiffs instead contend that the Notice's background section is vague because it identifies certain IRS code sections under which the described transactions will be challenged if they have the four specified elements, but is silent as to whether a transaction is proper if it has additional features that are included in Plaintiffs' transaction. Docs. 56 at 19-20, 65 at 13-16. Those additional features are a substantial risk of forfeiture to a charitable beneficiary, and reliance on 26 U.S.C. § 83 for exclusions from gross income for property transferred in connection with the performance of services. *Id.* According to Plaintiffs, the Notice's language is

impermissibly vague because "a person of ordinary intelligence would not have fair notice of what is prohibited."  Doc. 56 at 20 (citing *Tingley v. Ferguson*, 47 F.4th 1055, 1089 (9th Cir. 2022)).  The Court does not agree.

After describing the trust arrangements at issue, the reasons for the IRS's concerns, and the positions the IRS might take in future audits, the Notice sets forth a specific four-element test for identifying listed transactions.  The fact that Plaintiffs' transaction has additional features not covered by the four elements does not render the Notice vague.  *See* Doc. 61 at 26-27.  Section 6707A "imposes penalties for failing to report 'listed transactions' or 'substantially similar' transactions.  The Notice need not designate the [Govig trust] by exact operation."  *Mann Constr.*, 495 F. Supp. 3d at 579 (rejecting plaintiffs' argument that Notice 2007-83 is vague because "no aspect of [the Notice] describes a transaction providing only a current year death benefit, [which is] perfectly permissible under the Internal Revenue Code"); *see also Interior Glass Sys., Inc. v. United States*, No. 5:13-CV-05563-EJD, 2016 WL 4717765, at *7 (N.D. Cal. Aug. 12, 2016) (explaining that "a statute need not define every factual scenario that falls within its purview in order to withstand a vagueness challenge"); *Gift Surplus, LLC v. North. Carolina ex rel. Cooper*, 605 F. Supp. 3d 711, 730 (M.D.N.C. 2022) (explaining that a statute "need not spell out every possible factual scenario with celestial precision to avoid being struck down on vagueness grounds") (citation omitted); *Tingley*, 47 F.4th at 1089 (rejecting vagueness challenge where the law gave fair notice to a reasonable person of "what conduct is prohibited in the 'vast majority of its intended applications'").

In *Interior Glass*, the Ninth Circuit rejected a vagueness claim related to Notice 2007-83.  927 F.3d at 1084.  The IRS concluded that Interior Glass had participated in a transaction "substantially similar" to the listed transaction identified in Notice 2007-83.  *Id.*  Interior Glass argued that the term "substantially similar" was unconstitutionally vague.  *Id.* at 1085.  The Ninth Circuit rejected this argument, finding that the question of whether a person of ordinary intelligence could determine which transactions are

substantially similar to the listed transaction identified in Notice 2007-83 was "an easy one[.]" *Id.*

Count two alleges that Notice 2007-83 changes the definition of "qualified cost" using vague wording and recasts as "abusive" certain trust arrangements that otherwise comply with IRS regulations.  Doc. 1 ¶ 75.  The United States notes that the Notice does not purport to determine whether any particular cost is "qualified" or whether any particular transaction is "abusive."  Doc. 55 at 22.  The United States argues that the Notice's use of the term "abusive" in its title and its reference to the term "qualified cost" in the background section does not render the Notice's identification of the listed transaction impermissibly vague.  *Id.* at 20-22.  The Court agrees.  *See Mann Constr.*, 495 F. Supp. 3d at 570-71 (finding that plaintiffs failed to show that the IRS exceeded its authority because the Notice does not go "beyond designating listed transactions by . . . redefining 'qualified cost,' recasting otherwise lawful trust arrangements as abusive, and disallowing certain deductions"); *id.* at 579-80 ("Plaintiffs . . . have not demonstrated that the Notice is vague or ambiguous. . . .  The term 'abusive' appears only in the title of the Notice where it modifies the noun 'trust arrangements.'  Therefore, the term 'abusive' is wholly immaterial to the description of a listed transaction and could not affect whether Plaintiffs had a duty to disclose [their trust arrangement].").

Plaintiffs have not shown that the Notice is "'so vague and indefinite' as to provide no standard at all, or that 'a person of ordinary intelligence' could not understand if he or she participated in [a] . . . 'listed transaction.'"  *Interior Glass*, 2016 WL 4717765, at *6 (quoting *Fang Lin Ai v. United States*, 809 F.3d 503, 514 (9th Cir. 2015)).  The Court accordingly will grant summary judgment in favor of Defendants on count two.

**IV.   Count Four – Jeanette's Refund Claim for 2015.**

On August 26, 2019, the IRS assessed a § 6707A penalty against Jeanette for 2015 in the amount of $29,111.26.  Jeanette paid the penalty and $139.95 for underpayment interest on October 7, 2019.  On September 12, 2022, the IRS assessed a § 6707A penalty

against Jeanette for 2016 in the amount of $33,104.00.  Doc. 55-4 ¶¶ 7-8.[4]

Count four alleges that Jeanette is entitled to a refund of the $29,111.26 penalty she paid for 2015, plus overpayment interest, based on the stipulated judgment in *Govig II* and her administrative refund claim.   Doc. 1 ¶¶ 90-95.   When the IRS granted Jeanette's request for a refund of the 2015 penalty and then immediately credited that amount to the 2016 penalty it assessed against her, the United States moved to dismiss count four as moot.  Docs. 23 at 14, 33 at 2.  Plaintiffs countered that (1) they dispute the admissibility of the unauthenticated tax transcripts provided by the United States to show that the 2015 refund had in fact been granted, (2) Jeanette's 2016 assessment does not say that the 2015 penalty has been applied to 2016, and (3) overpayment interest would need to be resolved as part of count four.  Doc. 45 at 19.  Given these factual issues, the Court declined to dismiss count four at the pleading stage.  *Id.*

The United States now moves for summary judgment on the ground that Jeanette's refund claim for 2015 has been resolved.  Doc. 55 at 1, 11-14.  Plaintiffs no longer dispute that (1) the IRS abated the § 6707A penalty and underpayment interest for 2015; (2) Jeannette's 2015 account balance is now $0.00; and (3) the IRS credited Jeannette's 2016 account for the $29,111.26 penalty she paid for 2015, the $139.95 she paid for underpayment interest, and the $3,372.84 she was owed for overpayment interest. Doc. 56 at 6; *see also* Docs. 55-4 ¶¶ 7-12, 58 ¶¶ 17-25.  Nor do Plaintiffs dispute that the IRS was authorized to apply the credit for the 2105 refund to the amount owed for 2016. Doc. 56 at 11 (citing 26 U.S.C. § 6402(a)); *see Ostheimer v. United States*, No. CV 05-69-M-DWM, 2006 WL 2228976, at *2 (D. Mont. July 5, 2006) ("[T]he IRS had the authority to apply the credit from Plaintiffs' payment to the subsequent deficiencies. 26 U.S.C. § 6402(a) addresses this issue and allows the IRS to apply credits to liabilities."). Plaintiffs contend that issues of fact exist as to the date the 2015 credit was applied to the

---

[4] Plaintiffs dispute the legality of the 2016 penalty because it arose from Notice 2007-83.   Docs. 56 at 12, 58 ¶ 22.   But as the United States notes, Jeanette has not asserted a refund claim for 2016.  Doc. 61 at 14.

1   2016 account and the resulting amount of interest Jeanette is owed (*id.* at 3), but the

2   Court does not agree.

3          The United States has presented copies of Form 4340 Certificate of Assessments

4   and Payments for 2015 and 2016.  Doc. 55-5 at 2-7.  The forms show that the credit for

5   the 2015 refund was applied to Jeanette's 2016 account effective September 12, 2022, the

6   date of the 2016 penalty assessment.  *Id.*

7          It is well-settled that Form 4340 "is entitled to [a] presumption of correctness."

8   *United States v. Goodrich*, No. 3:21-CV-01046-YY, 2023 WL 8452651, at *2 (D. Or.

9   Oct. 23, 2023).  This Circuit has made clear that "Form 4340 is probative evidence in and

10  of itself and, 'in the absence of contrary evidence, is sufficient to establish that notices

11  and assessments were properly made.'"  *Hansen v. United States*, 7 F.3d 137, 138 (9th

12  Cir. 1993) (quoting *Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992)); *see also*

13  *Ostheimer*, 2006 WL 2228976, at *2 ("Form 4340 is acknowledged as a self-

14  authenticating official record, which is accepted by the Ninth Circuit Court of Appeals

15  and other courts as evidence and notice and proof of assessments.") (citing *Hughes*, 953

16  F.3d at 540); *United States v. Howe*, No. 2:19-cv-00421-DCN-CWD, 2023 WL 6516418,

17  at *10 (D. Idaho Oct. 5, 2023) ("A Form 4340 Certificate of Assessment and Payment,

18  complete with an assessment date, is alone sufficient to establish that a tax assessment

19  was properly made.").  Thus, unless Plaintiffs provide "evidence to the contrary, the

20  Court looks to Form 4340 to determine the operative dates[.]"  *Ohlinger v. United States*,

21  No. CV-18-04185-PHX-DJH, 2020 WL 7412220, at *8 (D. Ariz. Oct. 30, 2020).

22         Plaintiffs do not challenge the authenticity of the Forms 4340 presented by the

23  United States, nor do Plaintiffs dispute that the forms show an effective credit date of

24  September 12, 2022.  Plaintiffs instead contend that the actual credit date remains in

25  dispute based on two IRS notices Jeanette received.  Doc. 56 at 6, 10-12.  The first notice,

26  dated September 12, 2022, is a demand for payment of the $33,104.00 penalty assessed

27  for 2016.  Doc. 57-1.  The second notice, dated October 31, 2022, states that Jeanette and

28

13

Richard owe the IRS $81,617.60 for 2016.  Doc. 57-2.  Plaintiffs note that neither notice reflects a credit for the 2015 refund.  Docs. 56 at 6, 57 ¶¶ 2-4.

But as the United States has explained, the first notice does not reflect the credit because the notice was issued before the refund was fully processed on October 31, 2022, even though the credit was applied retroactively to September 12, 2022.  Docs. 61 at 8-15, 62 ¶¶ 2-4; *see also* Docs. 55-4 ¶ 15, 61-3 ¶¶ 9-15.  The second notice relates to Jeanette and Richard's joint income tax balance for 2016 (Form 1040), not the balance for Jeanette's § 6707A penalty.  Doc. 61 at 9, 14-15; *see also* Doc. 61-1.

Contrary to Plaintiffs' assertion (Doc. 56 at 10), the United States has established the date on which the credit for the 2015 refund was applied.  The Forms 4340 and supporting declaration show that the credit was made effective September 12, 2022.  *See* Docs. 55-4, 55-5; *see also United States v. Engen*, No. 21-35804, 2023 WL 2556858, at *1 (9th Cir. Mar. 17, 2023) ("The district court properly granted summary judgment because the government submitted Forms 4340 for the relevant years, and Engen failed to raise a genuine dispute of material fact as to whether the tax and penalty assessments were invalid."); *Ostheimer*, 2006 WL 2228976, at *2 ("The Defendant's valid submission of a certified Form 4340 establishes that any inappropriate assessments applied to Plaintiffs' 1978 taxes were redistributed to cover Plaintiffs' subsequent tax liabilities. While the Plaintiffs did make a failed effort to strike the submission of the Form 4340, they have not contested the factual matters manifested in the Form 4340, which lead this Court to grant Defendant's motion for partial summary judgment.").

Plaintiffs argue that count four remains pending for a single purpose: to determine the amount of interest Jeanette is entitled to receive for the 2015 assessment.  Doc. 56 at 3.  Plaintiffs do not dispute that with a credit date of September 12, 2022, Jeanette is entitled only to the $3,372.84 in interest that the IRS applied to her 2016 account.  *See* Doc. 58 ¶¶ 19, 24; 26 U.S.C. § 6611 (setting forth the method for calculating overpayment interest); *United States v. Gonzales*, 323 F. Supp. 3d 1119, 1129-30 (N.D. Cal. 2018) (rejecting the defendant's argument that the United States must "prove" the

amount of interest because interest is calculated as a matter of law).  Because the Court is satisfied that credit for the 2015 refund was applied as of September 12, 2022, Jeanette is entitled to no additional interest for the refund and the Court will grant summary judgment in favor of the United States on count four.  *See Lehman Bros. Holdings v. Laureate Realty Servs., Inc.*, No. 1:04-CV-1432-RLY-TAB, 2007 WL 2904591, at *31 (S.D. Ind. Sept. 28, 2007) (granting summary judgment where the plaintiff had obtained all relief to which it was entitled); *Saddiq v. Ryan*, 703 F. App'x 570, 571 (9th Cir. 2017) (affirming summary judgment where the district court could provide the plaintiff no additional relief).[5]

**IT IS ORDERED:**

1. Defendants' motion for summary judgment (Doc. 55) is **granted**.

2. Plaintiffs' cross-motion for summary judgment (Doc. 56) is **denied**.

3. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 10th day of January, 2024.

David G. Campbell
Senior United States District Judge

---

[5] Citing 26 U.S.C. § 6402(d), Plaintiffs assert that the IRS was required to provide notice that the credit had occurred.  Doc. 56 at 11-12.  But that section applies only when the IRS credits an overpayment to a debt owed to "another federal agency."  *Shlikas v. U.S. Dep't of Educ.*, No. CIV. WDQ-09-2806, 2013 WL 2149752, at *5 (D. Md. May 15, 2013).  "Section 6402(a) governs the credit of tax overpayments against federal income tax liabilities . . . .  Because Section 6402(a), unlike Section 6402(d), does not contain a notification requirement, the IRS was not under any statutory obligation to notify [Jeanette] that it used [her 2015] tax overpayment to offset [her 2016] tax liability."  *Donahue v. United States*, No. 92-818T, 33 Fed. Cl. 600, 606 (Fed. Cl. June 29, 1995).  What is more, Plaintiffs have not shown that the alleged lack of notice affects the date on which the credit for the 2015 refund occurred.  *See* Doc. 61 at 12.